MARY MANNING *vs.* ANDREW CARBERRY.

Norfolk.    November 17, 1898. — January 7, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Contract — Action — Evidence — Witness — Agency.*

An action on a contract, made by the plaintiff with an alleged agent of the defendant, cannot be maintained without proof that the alleged agent was in fact the agent of the defendant.

Evidence put in under the Pub. Sts. c. 169, § 22, to contradict a party's own witness, by showing that he has made at other times statements inconsistent with his testimony at the trial, has only the effect of discrediting the witness, and has not the effect of independent evidence.

On the issue whether the defendant authorized an alleged agent to make a certain contract, there was evidence that before the trial the alleged agent made statements in the presence of the defendant and others tending to show that he was authorized to make the contract; but the plaintiff's bill of exceptions did not show whether the defendant remained silent or not. *Held*, that there was no evidence that the defendant assented to the statements of the alleged agent.

If the defendant testifies in denial of the issue in the case, the fact that the jury may not believe him does not make his testimony affirmative evidence in support of the plaintiff's claim.

CONTRACT, for board of Hugh Carberry, from July 11, 1892, until May 6, 1896, the time of his death.    Trial in the Superior Court, before *Sherman*, J., who, at the close of the evidence for the plaintiff, ruled that there was no evidence which would authorize the jury to find for the plaintiff, and directed a verdict for the defendant.    The plaintiff alleged exceptions, which appear in the opinion.

*J. E. Cotter*, for the plaintiff.

*T. E. Grover*, (*N. L. Sheldon* with him,) for the defendant.

LATHROP, J.    While the bill of exceptions in this case is somewhat voluminous, as it recites all of the evidence given at the trial, the question presented is a narrow one.  Hugh Carberry, for whose board the plaintiff seeks to hold the defendant liable, was the father of the parties to this action, and of John Carberry, a witness in the case.    There is no doubt that there is evidence from the plaintiff's testimony which would authorize the jury in finding that John Carberry came to see the plaintiff on July 9, 1892, and represented that the defendant was going to Glouces-

ter, and sent him down to see if she would take his father to board ; that she asked whether the defendant would pay her, and John said " Yes." She further testified that the defendant made two payments, one of fifty dollars and one of ten dollars; and added, " That was all I received on account of the board and care of my father." She did not state, however, that at any time she presented a bill to the defendant, or that when these payments were made anything was said which would tend to show that the defendant made the payments as money due from him, or otherwise than as a gratuity. Nor was there any evidence when these payments were made. Her testimony a little later would tend to show, not a contract on her part with the defendant, but a solicitation for help in the support of their parent. She testified that in 1894 she said to the defendant, " I am in poor circumstances, Andy, and I think you ought to try to do something for me towards father's board " ; that he said, " You will be all right, Mary, some one of these days. You will get along all right. You take good care of father, and you will be all right." There is no evidence that at any time she spoke to the defendant in regard to the contract which she testified John made with her in behalf of the defendant, although she testified that the defendant frequently came to her house while her father was living with her.

John Carberry testified that he did not remember making any arrangement with the plaintiff ; that he did not remember being sent to his sister by his brother, but it might be so. This witness further testified that he called at the office of the plaintiff's counsel with the defendant, and said, in the presence of the defendant and the plaintiff, to the counsel, that his brother sent him down to make arrangements for the board of his father as long as he was away, and that his brother would pay the board.

This evidence was put in under the provisions of the Pub. Sts. c. 169, § 22, which allow a party producing a witness to contradict him by other evidence, and to prove that he has made at other times statements inconsistent with his testimony at the trial. Such evidence, however, though it discredits the witness, does not have the effect of independent evidence. *Ryerson* v. *Abington*, 102 Mass. 526, 530. *Day* v. *Cooley*, 118 Mass. 524. *Brooks* v. *Weeks*, 121 Mass. 433.

The plaintiff next contends that the silence of the defendant, when John Carberry made the statements in the office of the plaintiff's attorney, was evidence of the agent's authority to bind him, or amounted to a ratification of the contract. The short answer to this contention is that there is no evidence whether the defendant remained silent or not. For aught that appears, the defendant may have at once protested that he had given his brother no authority to make any contract in his behalf.

The last witness called by the plaintiff was the defendant, who testified that he sent his brother to his sister to notify her that their father was coming to her house; that he had nothing to do with any arrangement with the plaintiff for his father's board; that his father made his own arrangement, and he, the defendant, gave him the money to do so. The plaintiff contends that the jury were not bound to believe the defendant. This is true, but it does not make his testimony affirmative evidence in support of the plaintiff's claim.

We find nothing in the testimony of the witnesses for the plaintiff, whether the jury believed their testimony or disbelieved it, which would warrant a finding for the plaintiff.

*Exceptions overruled.*