## COMMONWEALTH *vs.* FRANK FESTO.

Suffolk.   November 10, 1924. — February 24, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Homicide. Practice, Criminal,* Continuance, Conduct of trial, Instructions, Argument by district attorney, Verdict, Exceptions. *Evidence,* Presumptions and burden of proof, Admissions and confessions, Inference, Competency, Opinion: expert, To discredit witness. *Witness,* Impeachment.

The determination of the question, whether a continuance in the trial of an indictment for murder shall be granted by reason of a request of counsel for the defendant grounded on the engagement of such counsel in the trial of another case on the criminal side of the court, lies wholly within the discretion of the presiding judge.

Soon after a homicide by shooting, relatives of the person killed were interrogated and identified as the person who did the shooting one who afterwards was indicted for murder.   At the trial of the indictment there was other identifying evidence and the district attorney, expecting that such relatives of the deceased might testify in effect that they could not identify the defendant, nevertheless called them and they so testified.   The district attorney, after he had categorically questioned the witnesses, as required by G. L. c. 233, § 23, respecting their previous inconsistent statements, and they had denied making them, was permitted by the trial judge to introduce evidence tending to show the former identification of the defendant by the witnesses.   *Held,* that

(1) The evidence as to the previous inconsistent statements by the witnesses was admissible under G. L. c. 233, § 23;

(2) The circumstance, that the district attorney expected that the witnesses might testify as they did, afforded no ground for objection to the showing of the previous inconsistent statements.

The circumstances, that the impeaching testimony above described disclosed that identification of the defendant was made, by one of the witnesses in question, at the station house soon after the defendant's arrest and that the defendant remained silent, did not make the admission of the testimony error where it appeared that the jury were at the time told by the judge that the testimony did not affect the defendant, that he was not called upon to say anything, and that no inference was to be drawn against him because he said nothing, and full and accurate instructions were given as to the scope and effect to be accorded to such testimony and the narrow limits to which it must be confined, and the jury furthermore were told plainly that such evidence, however much it might discredit the witnesses, did not have the effect of independent evidence and had no probative force with respect to the truth of the inconsistent statements made out of court.

At the trial of the indictment above described, where there was evidence tending to show that the defendant was standing and the deceased was sitting at a table when the shooting occurred, it was proper to permit a medical examiner who had examined the body of the deceased after the shooting to testify that the course of the bullets through the body of the deceased was such that he was sitting and could not have been standing on a level with the person who fired the shots, and that the person shooting must have been at some elevation above the person shot, and that the deceased could not have held a gun in his hand after the bullets entered his body.

At the trial above described, it was proper to exclude testimony proffered by the defendant to the effect that the deceased was reputed to be a gunman, of a quarrelsome disposition and under indictment for robbery, there being no evidence that the defendant had any knowledge of that disposition.

Statements made by a person under arrest are admissible at a subsequent trial on the charge for which he is arrested if there is no evidence that the statements were induced by any threat or promise, even if no preliminary warning was given to him.

At the trial above described, it appeared that the shooting was done in an ice cream store in Boston and that three shots were fired by the person who did the killing. There was direct evidence tending to show that immediately thereafter the defendant was seen backing out of the door of the store where the fatal shots had been fired, "covering the door with a gun," that he then ran, but was soon caught by a man who saw him come out of the store, and was placed under arrest; that he then had in his pocket four bullets and a revolver, "real warm, hot," containing three empty shells and three cartridges; that he made contradictory and absurd statements in explanation of his possession of the revolver and of his presence in Boston; and that the bullet found in the body of the deceased was like those in the revolver found on the defendant and had markings which would be made on a bullet discharged from such a revolver. The judge refused to order a verdict of not guilty. The jury found the defendant guilty of murder in the second degree. *Held,* that the refusal to order a verdict of not guilty was proper and that the verdict rendered could not be said to be unwarranted.

An exception by the defendant at the trial of an indictment for murder to a portion of the argument of the district attorney, in which he commented upon a failure of the defendant to testify in his own behalf, will not be sustained where it appears that the district attorney at once withdrew the remark, apologizing and urging the jury not to give weight to it, and that the trial judge, fully and as emphatically as was possible, instructed the jury to disregard the remark, at the same time explaining with amplitude of care and in accordance with law the right of the defendant not to testify and the requirement that no inference be drawn against him from his failure to take the witness stand.

It was not improper for the district attorney, at the trial of the indictment above described, to suggest in argument that relatives of the deceased, whose testimony had been inconsistent with statements previously made by them identifying the defendant as the assailant of their relative, had been actuated by fear in their testimony at the trial.

INDICTMENT, found and returned on September 5, 1923, charging the defendant with intentional murder of Domenic Rigione on August 26, 1923.

In the Superior Court, there was a trial before *Sanderson*, J. Before the testimony of three relatives of the deceased, witnesses for the Commonwealth referred to in the opinion, was impeached by showing that their testimony was inconsistent with statements previously made by them, they were interrogated categorically with respect to whether they had made such statements. Other material evidence and exceptions saved by the defendant are described in the opinion. The defendant was found guilty of murder in the second degree and alleged exceptions.

*W. R. Scharton*, for the defendant.

*D. T. O'Connell*, Assistant District Attorney, for the Commonwealth.

RUGG, C.J.   This is an indictment charging the defendant with the crime of murder. The jury returned a verdict of guilty in the second degree.

Before the jury were empanelled, the attorney for the defendant moved for a continuance on the ground that he was actually engaged in the trial of another criminal case of much less magnitude before another session of the Superior Court and had given due notice thereof to the district attorney. Other conflicting engagements of counsel afford no right to the continuance of any particular case. It was provided by R. L. c. 173, § 81, that an attorney at law actually engaged in the trial of certain causes should not be required to proceed to the trial of other causes except by special order of court. That statute was repealed by St. 1912, c. 542. The matter now is wholly in the control of the court. It is manifest that this is the only way in which the trial of causes can proceed in an orderly and expeditious way under present conditions. There is no dearth of lawyers. There is congestion in the dockets of the Superior Court. No attorney can accept personal retainers for a larger number of cases than he can try as and when they are reached and expect courts to continue any case for his convenience or that of his clients. Unreasonable delay in the administration of justice can be

avoided only by leaving continuances of cases because of conflicting engagements of counsel solely to the sound discretion of the court. The facts in the case at bar, which need not be further narrated, show that the judge was clearly right in denying the motion. Motions for continuance commonly are for the presiding judge alone. *Noble* v. *Mead-Morrison Co.* 237 Mass. 5, 16. Under a much narrower principle than that here stated, upon the facts as the judge may have found them, there was no error in denying the motion. The attorney in question tried the case at bar.

There was evidence tending directly or indirectly to show that the defendant entered an ice cream store in Boston on an August evening and shot and killed one Rigione, as he was seated at a table with his brother-in-law, with two cousins who were sisters, and with another man, and then ran into the street, "covering the door with a gun," and soon after was arrested. The brother-in-law and cousins were called as witnesses by the district attorney. They testified that they did not know the other man sitting at the table. His identity was not established at the trial. Others, who were in the store and were called as witnesses, testified that they were unable to identify the person who did the shooting. One or more of the three relatives of Rigione called as witnesses testified in whole or in part in substance that they could not identify the defendant as having been in the store on the night in question, and that, just before the fatal shots were fired, Rigione uttered some insulting or threatening remarks to his assailant, rose from his chair, and made motions as if to draw a weapon, or in fact pulled out a revolver. Evidence was then rightly admitted to the effect that soon after the homicide these witnesses made statements quite different from their testimony given in court. According to some of these statements the defendant was identified as the person who did the shooting, and Rigione was unconscious of his presence and made no threat or remark to him and did not reach for any weapon. Evidence of inconsistent statements made at other times by these witnesses concerning the subject of their testimony was clearly admissible under G. L. c. 233, § 23. It was proper for the district attorney

to introduce such evidence respecting witnesses called by him in a criminal prosecution. *Commonwealth* v. *Moinehan,* 140 Mass. 463. The circumstance that he expected that the witnesses might testify as they did afforded no ground for objection to the showing of previous inconsistent statements. *Brooks* v. *Weeks,* 121 Mass. 433. It well may have been thought necessary to call these persons as witnesses as a part of the case for the Commonwealth. They were all present at the homicide. It is not necessary to narrate in detail either the testimony given by each witness or the inconsistent statements made by each on previous occasions admitted in evidence. All the impeaching testimony related to matters material to the issues being tried. *Ryerson* v. *Abington,* 102 Mass. 526, 530, 531. A careful examination of the entire record in this particular demonstrates that no error was committed.

Full and accurate instructions were given as to the scope and effect to be accorded to such impeaching testimony and the narrow limits to which it must be confined. The jury were plainly told that such evidence, however much it might discredit the witnesses, did not have the effect of independent evidence and had no probative force with respect to the truth of the inconsistent statements made out of court. The rights of the defendant were protected. It must be presumed that the instructions were followed. *Manning* v. *Carberry,* 172 Mass. 432. *Donaldson* v. *New York, New Haven & Hartford Railroad,* 188 Mass. 484, 486. *Commonwealth* v. *Turner,* 224 Mass. 229, 237. *Bloustein* v. *Shindler,* 235 Mass. 440. *Southern Railway* v. *Gray,* 241 U. S. 333, 337.

The circumstance that the impeaching testimony disclosed that identification of the defendant was made at the station house soon after his arrest by one of these witnesses, and that the defendant remained silent, discloses no error. The jury were at the time told by the judge that the testimony did not affect the defendant, that he was not called upon to say anything, and that no inference was to be drawn against him because he said nothing. The rights of the defendant thus were protected. *Commonwealth* v. *Spiropoulos,* 208 Mass. 71, 74.

The medical examiner testified to facts revealed at an autopsy performed by him on the body of Rigione. It being the contention of the Commonwealth that the shots were fired at Rigione while he was seated at the table, the medical examiner was permitted to testify that the course of the bullets through the body of the victim was such that he was sitting and could not have been standing on a level with the person who fired the shots, and that the latter must have been at some elevation above the person shot. He also was permitted to testify that the deceased could not have held a gun in his hand after the bullets entered his body. There was no error in admitting this testimony. It related to matters outside the range of common experience. It pertained to an exact knowledge of the anatomy and the vital organs of a human body and the course of projectiles through it. It cannot be presumed that a jury would not be aided by the technical learning of a medical examiner of experience on such a subject. *Commonwealth* v. *Russ*, 232 Mass. 58, 78. *Commonwealth* v. *Reilly*, 248 Mass. 1, 8.

There was no error in the exclusion of testimony proffered by the defendant to the effect that Rigione was reputed to be a gunman, of a quarrelsome disposition and under indictment for robbery. This ruling was rightly made on the ground that there was no evidence that the defendant had any knowledge of that disposition. Such evidence is never competent except to show that the defendant acted under apprehension of great bodily harm. Ignorance of that reputation cannot cause such apprehension. *Commonwealth* v. *Tircinski*, 189 Mass. 257. *Commonwealth* v. *Rivet*, 205 Mass. 464, 466.

The statements made by the defendant at the time of his arrest rightly were admitted in evidence. Although the defendant was under arrest, his words to the officer, "You have got me wrong," and in explanation of his possession of the pistol warm from its recent discharge, were competent, even though no preliminary warning was given. The statements do not appear to have been induced by any threat or promise. *Commonwealth* v. *Sherman*, 234 Mass. 7, 11.

*Commonwealth* v. *Gangi*, 243 Mass. 341.    *Commonwealth* v. *Dascalakis*, 243 Mass. 519, 522.

The request for a directed verdict rightly was denied. The fact of homicide through the firing of three shots from a revolver does not appear to have been disputed. There was direct evidence tending to show that immediately thereafter the defendant was seen backing out of the door of the store where the fatal shots had been fired, "covering the door with a gun," and then ran, but was soon caught by a man who saw him come out of the store, and was placed under arrest; that he then had in his pocket four bullets and a revolver, "real warm, hot," containing three empty shells and three cartridges; that he made contradictory and absurd statements in explanation of his possession of the revolver and of his presence in Boston; and that the bullet found in the body of Rigione was like those in the revolver found on the defendant and had markings which would be made on a bullet discharged from such a revolver. There were other circumstances beside these salient facts, which might have been thought to point inferentially in the same direction. There was ample evidence to require the submission of the case to the jury. While it was more or less circumstantial, it well may have been regarded as a satisfactory basis for conviction. *Commonwealth* v. *Richmond*, 207 Mass 240, 246, 247.

During his final argument, the assistant district attorney, referring to a rhetorical question put, as he said, in the argument of the attorney for the defendant, — "If a man who shot me knew I was a gunman, would he wait, would he wait? . . . What would you have done, or I? " — proceeded in these words: "That is the interrogation. I will answer it for you, Mr. Foreman and gentlemen. If I relied on a theory of self-defence I would have the courage to take the witness stand." The attorney for the defendant here interrupted and the assistant district attorney then said, "I will withdraw that. I did not intend that." The court then said, "The jury will disregard that remark. It should not have been made." The argument then was resumed: " . . . the

court will tell you that a moment ago, in the earnestness of my presentation, my tongue went too far, for which I apologize. I should not have said it. Of course, the defendant is not required to take the stand. I ought to know that, and I do know that, and I did not intend to make that reference to you. It is his right, as it would be your right or my right or anyone's else not to take the stand, and the court will explain that feature of it to you. Do not give any weight to what I said on that feature." The judge in his charge, referring to this incident as having been an unintended remark, fully and as emphatically as was possible instructed the jury to disregard the remark, at the same time explaining with amplitude of care and in accordance with law the right of the defendant not to testify and the requirement that no inference be drawn against him from his failure to take the witness stand. This was in accordance with correct practice. It fully protected all the rights of the defendant. The case upon this point is covered by *Commonwealth* v. *Richmond*, 207 Mass. 240, 247 – 250, and the authorities there collected and reviewed. *Commonwealth* v. *Farmer*, 218 Mass. 507, 514. *Commonwealth* v. *Kaplan*, 238 Mass. 250, 256.

The suggestion in the argument in behalf of the Commonwealth that the cousins of Rigione were actuated by fear in testifying as they did presents no reversible error. The inconsistencies between their statements on the witness stand and their statements outside the court room touching the same subject justified some comment. Their appearance and manner of testifying and all the circumstances may have afforded warrant for reference to timidity or terror as a possible explanation. Quite apart from these factors, it cannot be said on this record that there was any error of law in referring by way of argument to the possible element of fear. The charge of the presiding judge gave to the defendant in this respect every protection to which he was entitled.

Numerous other objections were taken to the argument of the prosecuting officer. It is not necessary to go over them one by one. There is nothing in any one of them which shows that there was any error of law.

There was no error in the way in which the trial judge dealt with the several requests for instructions. So far as they were sound in law, they were given. Many of them singled out particular bits of evidence for comment. But it is familiar law that a judge is not required to direct the attention of the jury to specific and in themselves indecisive facts. It is enough if all the issues are fairly presented for the consideration of the jury.

The charge given in the case at bar was adequate and fair. It amply protected the rights of the defendant upon all points. So far as required by solicitous regard for justice, it guarded the defendant against improper arguments by the assistant district attorney and unwarranted inferences from evidence.

All the exceptions have been examined. Many of them have not been argued. Those which are worthy of detailed consideration have been discussed in this opinion. The record discloses nothing to indicate that the defendant did not have a fair trial. *Commonwealth* v. *Dyer*, 243 Mass. 472, 508, 509.

*Exceptions overruled.*