## Kinder v. Commonwealth.

(Decided March 10, 1936).

146

DICKINSON & STEWART for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Charlie Kinder appeals from a judgment of manslaughter with a penalty of twenty-one years in prison.

He and the deceased, Burt Gambrel, with Bill Jackson and Arthur Mayo, returned to Barbourville about 2 o'clock in the afternoon after riding around for some time in Kinder's automobile, a $65 Ford. Some, if not all, of the party had been drinking. There is evidence that Kinder gave Gambrel the ignition key and permission to use the automobile, as he had frequently done before. Kinder, however, denies this. He and Mayo went to get something to eat and later found that his car was missing from the place he had parked it. He informed some of the police officers that his automobile had been stolen, and asked if they had seen it. He indicated with profanity his belief that Gambrel had taken the machine, and said he would kill him if he caught him near the car.

Kinder went with Mayo and a young lady to Corbin looking for the machine and soon discovered it on Main street being driven by Gambrel, with Jackson by his side. Mayo blew his horn several times and, according to Kinder, forced the car to the curb where it stopped. However, it appears that Gambrel turned the corner of Sixth street and stopped close by, and that Mayo's car was stopped on Main street near the corner. The proof of the commonwealth is that Kinder went across to his automobile with a pistol drawn and told Gambrel to "get his damned self out of there," and

then shot him through the open window of the door while Gambrel had both hands on the steering wheel and without his having said anything or made any demonstration. Kinder then went across the street to a filling station and asked where he could find an undertaker. One sitting there was pointed out, and he said to him: "I have got a fellow over there for you," or "I shot a fellow over there."

The defendant testified that he went over to the car and asked Gambrel what made him steal it, and Gambrel responded: "You ain't got no car," and hit at him with an automobile crank. He jumped back and as Gambrel started to come out the car door with the crank in his hand, he shot him when about four feet away. He shot, so he testified, because "he was fixing to kill me, I reckon, with that crank; I shot him to save my own self." Again he stated that he shot to save his own life. Asked if he had anything against Gambrel or had any trouble with him before, or any reason for wanting to raise a difficulty other than that he wanted to get possession of his car, the defendant answered: "That was all I wanted was my car." He put a different version upon his inquiry for an undertaker, and explained that he was looking for some one with an ambulance to take the wounded boy to the hospital.

The defendant asked for instructions upon the idea that if Gambrel had stolen the car he had the right to use such force as appeared necessary or to him reasonably necessary in order to prevent Gambrel from depriving him of the automobile, even to the taking of his life; also to prevent the commission of a felony, or of the theft of the machine. The facts did not authorize such instructions. The defendant claimed to have shot in self-defense and not either to recover possession of his car or to prevent the commission of a felony. His statement that all he wanted was his car would not seem to modify his positive assertion that he shot in self-defense. The automobile had been stopped on signal and was standing at the curb. The necessity for shooting otherwise than in self-defense was not made manifest in any degree. In any event (on an extreme view of the defendant's claims), the taking of life cannot be justified on the ground that it was necessary to prevent the commission of a mere theft. The crime sought to be

prevented must involve the security of the person or home, or contain an element of force or violence. Stacey v. Commonwealth, 189 Ky. 402, 225 S. W. 37, 25 490; Howard v. Commonwealth, 198 Ky. 453, 248 S. W. 1059; Flynn v. Commonwealth, 204 Ky. 572, 264 S. W. 1111; Commonwealth v. Beverly, 237 Ky. 35, 34 S. W. (2d) 941. Compare, Crawford v. Commonwealth, 241 Ky. 391, 44 S. W. (2d) 286.

Arthur Mayo and Hazel Baker, who were with the accused at the time, were examined shortly afterward under oath before a stenographer, and the examinations reduced to writing and signed. In laying foundations to establish contradictions between some of their statements then made and their testimony, the commonwealth asked on cross-examination each of the witnesses if they had not made certain answers to questions propounded. In some instances, the witnesses admitted the former statements and in others undertook to explain them. During the examination, each witness was given an opportunity to examine the transcript, and did so. The appellant argues that this was an improper method of examination, and that the entire statement and transcript should have been read under the rule that when part of a document is offered in evidence all of it should come in. The method of interrogation seems to have been in accord with the provisions of sections 597 and 598 of the Civil Code of Practice. Extrajudicial statements of witnesses are competent for no other purpose than to establish contradictions, and it was proper to ask about only such parts as served or appeared to serve that purpose. This would not, of course, close the door to the introduction of other parts of the record relating to the same matter which tend to explain or withdraw the apparently inconsistent statements. The examination along this line must relate to material, inconsistent statements only, else the door would be wide open for collateral and irrelevant evidence, and the repetition of that which is competent. Illinois Central R. Co. v. Johnson (Ky.) 115 S. W. 798; Hayden v. Commonwealth, 140 Ky. 634, 131 S. W. 521; Ohio Valley Mills v. Louisville Ry. Co., 168 Ky. 758, 182 S. W. 955.

It was not error to deny the defendant the right to introduce evidence tending to prove that the deceased was an automobile thief, or had a reputation of being

such. Roberson Cr. Law, sec. 437. In homicide cases, evidence that the deceased bore the general reputation of being a violent, quarrelsome, or dangerous man, or in the habit of carrying concealed deadly weapons, is admissible where the homicide is sought to be justified as having been done in self-defense. Roberson Cr. Law, sec. 489. The defendant was permitted to do that here.

The claim of improper argument of the commonwealth's attorney cannot be considered, since his statements are not contained in the bill of exceptions. Alexander v. Commonwealth, 262 Ky. 93, 89 S. W. (2d) 867. Some other points are made, but we do not see any merit in them.

Judgment affirmed.