38 So.2d 354

## DEGRO v. STATE.
### 6 Div. 634.

Court of Appeals of Alabama.
Jan. 18, 1949.

Beddow & Jones, Roderick Beddow and Robt. W. Gwin, all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The defendant was duly arraigned upon the indictment which charged him with the offense of murder in the first degree; and, in answer thereto, interposed a plea of not guilty. He relied upon self defense to justify his admitted fact that he did kill the deceased by shooting him with a pistol. The trial resulted in the conviction of defendant for the offense of murder in the second degree, and his punishment fixed at twenty years imprisonment.

There were no eye witnesses to the actual shooting, except the defendant, and his version of the killing was testified to by him. His testimony upon the trial was as follows:

"That he lived at 439 Second Street, North, Birmingham, Alabama, and that he had lived in Birmingham continuously since 1921. He stated that he had been born in Italy and that he had immigrated to the United States on February 9, 1909, and that he was a naturalized citizen of the United States. He testified that he was acquainted with Alf Naro. The defendant stated that he operated a grocery and meat market in the City of Birmingham. He further testified that he owned a pistol on March 16, 1947, and that he had a permit to carry a pistol and that the pistol which had been introduced in evidence was his pistol. Mr. Degro stated that he had known Alf Naro since the time he had joined the Club and this had been about three years before. He stated that he was sixty-three years of age. Mr. Degro testified that he went to the market to make purchases for his store about four thirty in the morning and that he carried his pistol with him to the market. He stated that when he went to the Italian-American Club on the afternoon of March 16, 1947, that he did not know that Alf Naro was at the Club. He stated that he had proceeded to the Club in a leisurely fashion and that when he turned the corner of Seventh Street and Third Avenue that he was proceeding at a slow rate of speed. The witness testified that he did not see a group of colored boys standing in front of the store next to the Italian-American Club at the time that he went to the Club. Mr. Degro testified that the door to the Club was not locked and that when he went in, he went into the right hand front room and took a seat. He said that he sat there some ten or fifteen minutes and that he then went to the back room located on the right hand side of the Club and that as he went in the room that he saw Alf Naro. He said that Mr. Naro was sitting down when he walked into the room and that he addressed Mr. Naro and said, 'Fonse, I want to talk to you one minute' and that Fonse had replied, 'Alright.' The witness stated that Fonse had gotten up and that they had gone into the front room. He further stated that he was not mad, nor did he address Alf Naro in an angry tone. When they reached the front room, the witness stated that he asked Fonse, 'Fonse, why you telling to the member I owe you five dollars I don't want to pay you? Why did you tell that for? You know what the reason I never give it to you—the five dollars.' Mr. Degro stated that he had asked Mr. Naro why Mr. Naro didn't tell the Club members the reason that he had not repaid him the five dollars. He further testified that Mr. Naro had taken a seven of diamonds from the discarded cards in order to make out a flush and by so doing Mr. Naro had won a pot of twelve dollars and fifty cents. The witness stated that the seven of diamonds had come from among the cards that he had discarded. Degro stated that he had approximately twenty-five dollars when he got into the game and that he had borrowed five dollars from Mr. Naro during the course of the game and that he had borrowed this five dollars approximately an hour and a half before Mr. Naro slipped the seven of diamonds from the discarded cards. Mr. Degro stated that this poker game had taken place several weeks prior to the shooting. Mr. Degro testified that he told Mr. Naro that if he would pay the twelve dollars and a half to Phillip Lasusa he

would pay him the five dollars which he had borrowed. He stated that on the occasion that the shooting occurred he said to Mr. Naro, 'You know you take my card,' and that Mr. Naro replied, 'You are a God damed son-of-a-bitch liar.' Mr. Degro testified that he told Mr. Naro that he was an old man and that he didn't want any trouble and that he picked up his coat and started for the door and that Mr. Naro grabbed him on the sleeve of the coat, his fingers gripping the left sleeve of his coat and left arm and that Mr. Naro drug him outside. Mr. Degro stated that as they went down the front steps that Mr. Naro again cursed him and as they came to the bottom of the steps and walked on the sidewalk extending from the steps to the public sidewalk that Mr. Naro struck him and that he lifted his arm to keep Mr. Naro from hitting him in the face and that the blow hit him on the arm and that following this blow that Mr. Naro knocked him down on the ground. He stated that as he lay on the ground Mr. Naro came close to him and stated, 'Stand up, get up, you son-of-a-bitch, I am going to kill you.' Mr. Degro stated that he tried to get up on his knees and that as he did so he saw Mr. Naro thrust his left hand into his breast pocket and that as he did so that he, that is the witness, took his pistol out of his pants pocket and shot Mr. Naro. Mr. Degro testified that he was on his knees and attempting to raise up at the time that he shot Mr. Naro. Immediately after shooting Mr. Naro, Mr. Degro testified that he went back into the Club and asked one of the members to call Headquarters because he believed that Fonse was dead; that he stayed in the Club house for a short period of time and that he went on out to his car and took his car home. He said that he was on the front of his house when the officers came to his home; that Alf Naro had a bad reputation for being a turbulent, violent and uncompromising individual. The witness further testified that in October, 1926, he had been convicted on a charge of buying a carton of stolen cigarettes.

"On cross-examination Mr. Degro stated that he had served time for the offense of buying a carton of stolen cigarettes;

that he had not disclosed the fact to any of the Club members that Alf Naro had taken the seven of diamonds from among his discarded cards. He stated that he quit playing poker when Alf Naro stole the seven of diamonds and that he went home. He testified that he had a loaded pistol in his pants pocket on the day of the shooting. He stated that he had the pistol on his person when he left home to come to the Club. He said that when he first saw Alf Naro on the afternoon of the shooting that Alf Naro was sitting down in the back room talking to other Club members and that he had told Alf Naro, 'I want to talk to you.' He stated that he and Alf Naro left the back room and went to the front room and that he asked Alf Naro why he kept telling the Club members that he, Mr. Degro, owed him five dollars. He stated that when he first came to the Club he went into the front room and that he was alone and that he had remained in the Club room for a period of approximately ten minutes. He said that when he and Alf Naro went into the front room that Alf Naro cursed him by calling him 'a damn lying son-of-a-bitch.' He said that after Alf Naro cursed him that he started out the front door, or started towards the front door and that Alf Naro grabbed his arm and pulled him outside. He stated that Alf Naro jerked him down the steps. He said that Alf Naro hit him with his right hand fist and that Naro hit him on his arm. He stated that he did not recall the particulars or any statement that he might have made to the police officers. He said that as he lay on the ground that Alf Naro said to him, 'Get up, you son-of-a-bitch, I am going to kill you,' and that he had shot Alf Naro as he was trying to get up on his knees and that Alf Naro was standing above him and facing him. He said that as he saw Alf Naro put his left hand into the inside of his coat that he got his pistol and shot him and that as he shot Alf Naro, Alf Naro turned around and fell to the right. He said that he and Alf Naro were some four or five feet apart at the time of the shooting. He said that he did not touch Alf Naro's body after the shooting but that he immediately went back into the

Club. He said that after telling the Club members to call the police and that he believed Fonse was dead that he went back outside of the Club and went to his automobile and drove to his home. Mr. Degro testified that Alf Naro had demanded the five dollars on two prior occasions but that he had not intended to give Alf Naro the five dollars. He stated that when he first came to the Club that he had parked his car between the Club house and the building next to the Club house. Mr. Degro stated that he did not know what kind of car Mr. Naro owned. He testified that Alf Naro did not draw his pistol but that he tried to draw his pistol. He stated that after the shooting he got in his automobile and carried the car home and put the pistol in the dresser drawer at home.

"On redirect examination Mr. Degro stated that he drew his pistol when he saw Mr. Alf Naro put his left hand in the inside of his coat and that as he fired his pistol Mr. Naro whirled and turned to the right."

■ In brief, by the Attorney General, we are urged to accord no credence to the testimony of the defendant, and to declare and hold that all he said when testifying in his own behalf was untrue. To grant such insistence is not within the province of this court, or the trial court. When the evidence adduced, on a trial under an indictment for murder, shows the transaction in two very different phases, it is for the jury to determine which is the true one; and it is the duty of the court to declare the law on each phase of the case, not ignoring the evidence on any point because he may regard it as weak or inconclusive. Smith v. State, 68 Ala. 424.

The Constitutions, state and federal, in several provisions or clauses, not only declare but guarantee that no citizen shall be deprived of his life, liberty, or property, except by due process of law. It cannot be said that this appellant is not within the protection of these guarantees. The guilty, as well as the innocent, have a right to be tried in accordance with the law of the land. The innocent ought not to be punished, and the law does not intend or provide that they shall be punished; and

as to the guilty, the law provides that such shall not be punished, except in the mode or manner provided by law. Patterson v. State, 202 Ala. 65, 79 So. 459.

Members of the Club who were present when Mr. Degro came in, all testified that he spoke to Naro and said, "I want to talk to you Fonse," and each of them testified "Mr. Degro did not appear to be mad, nor did he appear to be drinking, that he appeared to be in good humor. That Degro simply walked into the room and spoke to Mr. Naro, and they immediately left the room." And the undisputed evidence shows when the two principals got outside the deceased struck the defendant and knocked him to the ground, and deceased was advancing on the defendant and was putting his left hand into his right hand inside coat pocket, when the fatal shot was fired. The evidence is also without dispute that the officers found a loaded pistol with the barrel down and the grip sticking up in the right inside pocket of deceased's coat.

The evidence disclosed that the deceased was much larger, and more robust, than the accused, who was about 62 years of age.

The defendant and the deceased had each lived in the City of Birmingham and were in business in said city for a long number of years.

The defendant put his character in issue, and numerous citizens from all walks of life, testified that defendant bore an excellent good character generally, and likewise, a good character for peace and quiet. A number of like citizens testified that deceased, Naro, bore the character of being a violent, turbulent and bloodthirsty man. The testimony as to character of both parties was without dispute or conflict.

■ In this case, as in all criminal prosecutions, on entering upon the trial the accused was presumed to be innocent; this presumption was evidentiary and attended him through the entire trial, or until such time as the State had met the burden of showing by the evidence his guilt beyond a reasonable doubt.

■ Under the defendant's plea of not guilty on the grounds of self defense, and the evidence offered in support thereof,

the trial court should have allowed the defendant to testify that the deceased was in the habit of carrying a pistol. On this question during the direct examination of the defendant, the record shows the following:

"During the direct examination of the defendant, Frank Degro, the following transpired:

" 'Mr. Beddow: Q. Well, the jury can see you. We will leave that to them about your weight and height; I will leave that to the jury. Frank, did you know, did you know whether or not Alf Naro habitually carried a pistol?

" 'Mr. McCall: We object to that, if the Court please.

" 'The Court: Sustained.

" 'Mr. Beddow: We except.

" 'Mr. Beddow: Q. Had you, prior to that date or before the date that you are alleged to have shot Alf Naro, seen Alf Naro with a pistol?

" 'Mr. McCall: We object to that, if the Court please.

" 'The Court: Sustained.

" 'Mr. Beddow: We except.

" 'Mr. Beddow: Now, did you know, in the community in which he lived, here in the City of Birmingham and Jefferson County, Alabama, did you know Alf Naro's general reputation, that is to say what the people generally said of and concerning him, with regard to being an habitual pistol toter.

" 'Mr. McCall: We object to that, if the Court please.

" 'The Court: Sustained.

" 'Mr. Beddow: We except.' "

In the foregoing rulings the trial court fell into error. The following authorities are conclusive on this point of decision: Cawley v. State, 133 Ala. 128, 32 So. 227; Wiley v. State, 99 Ala. 146, 13 So. 424; Naugher v. State, 116 Ala. 463, 23 So. 26; Monroe v. State, 5 Ga. 85, 137; Franklin v. State, 29 Ala. 14, 17; People v. Singh, 78 Cal.App. 488, 248 P. 986; Preston v. U. S., 65 App. D. C. 110, 80 F.2d 702; Gibson v. State, 176 Ga. 384, 168 S.E. 47; Kinder v. Commonwealth, 263 Ky. 145, 92 S.W.2d 8; Commonwealth v. Festo, 251 Mass. 275, 146 N.E. 700; Sprinkle v. State, 137 Miss. 731, 102 So. 844; 30 C.J. p. 231 note 28; 40 C.J.S., Homicide, § 272; Possession and use of weapon see infra Sec. 278; Nicholson v. State, 22 Ala.App. 635, 118 So. 814; People v. Allen, 378 Ill. 164, 37 N.E.2d 854; 30 C.J. p. 232 note 29; 40 C.J.S., Homicide, § 272.

In the court's oral charge to the jury he stated: "Malice may be inferred from the use of a deadly weapon unless it is rebutted by the defendant to the satisfaction of the jury." The defendant reserved specific exception to this portion of the oral charge. We perforce, must and do hold, under undisputed evidence in this case, that the exception was well taken and must be sustained. The following authorities so hold and declare. Baker v. State, 33 Ala.App. 596, 36 So.2d 239; Stillwell v. State, 107 Ala. 16, 19 So. 322; McDowell v. State, 238 Ala. 482, 191 So. 894; Hornsby v. State, 94 Ala. 55, 10 So. 522; Simpson v. State, 31 Ala.App. 150, 13 So.2d 437; Smith v. State, 68 Ala. 424; Dixon v. State, 128 Ala. 54, 29 So. 623; Berry v. State, 209 Ala. 120, 95 So. 453; Sylvester v. State, 71 Ala. 17; Tribble v. State, 145 Ala. 23, 40 So. 938; Baugh v. State, 218 Ala. 87, 117 So. 426.

In the case of Smith v. State, supra, the Supreme Court said:

"In a criminal cause, when the evidence, whether introduced by defendant or State, establishing the killing, also shows the matter in justification or excuse, the burden of proof is not thereby shifted from the State upon the defendant, and it does not devolve upon the defendant to prove to the full satisfaction of the jury the matters in justification or excuse before they can acquit; and it is sufficient to authorize an acquittal, that the jury have a reasonable doubt from all the evidence of the guilt of the defendant."

See also the case of Henson v. State, 112 Ala. 41, 48, 21 So. 79, 81, where the court said:

"Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish

his innocence, or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial, and applies to every element necessary to constitute the crime."

As insisted by appellant's counsel, the testimony of the defendant, herein quoted, was corroborated by the undisputed evidence, also quoted, which tended to prove the following:

"Degro's testimony that he was not angry when he spoke to the deceased was corroborated by State's witnesses Lombardo and Giardini. Degro's testimony as to the fact that he was on his knees at the time that he shot is corroborated by the testimony of Birmingham Detective George Palmer, who testified that the course of the bullet was upward. Degro's testimony that the deceased thrust his left hand in his inside pocket was corroborated by the fact that State's witness Grover C. Gilliland testified that a pistol had been removed from the inside coat pocket of the deceased. Degro's testimony as to his apprehension and fear of the deceased was corroborated by the many witnesses who testified as to the reputation of the deceased as being a violent, bloodthirsty, and turbulent individual."

And further: "In denying the appellant the opportunity to testify that he knew that the deceased habitually carried a pistol, the trial court ruled contrary to all of the authorities and to the rulings handed down by this Court and the Supreme Court of this State. It was for the jury to determine the credibility of the appellant as to this evidence. The admission of testimony relative to the appellant's knowledge might have materially affected the jury's consideration of the appellant's fear and apprehension of the deceased.

"The court's charge as to the presumption of malice was such as to deny the appellant the right of having the jury consider all the evidence in the case."

For the errors indicated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.