(130 So. 784)

## McTYEIRE v. McGAUGHY.

### 6 Div. 524.

Supreme Court of Alabama.

Oct. 16, 1930.

Rehearing Denied Nov. 28, 1930.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Luther Patrick, of Birmingham, for appellee.

BROWN, J.

This action is by a patient against a doctor of dental surgery for malpractice.

The complaint consists of three counts. The first count alleges that the defendant, who held himself out as a dental surgeon, was "employed and retained by the plaintiff to attend upon and treat plaintiff's teeth, or tooth, and defendant entered upon said employment; plaintiff avers that the defendant conducted himself in such an unskillful manner in and about the treatment of said teeth, or tooth, as that a proximate consequence of such unskillfulness and negligence in and about the treatment of plaintiff's said teeth, or tooth, plaintiff was greatly injured in this, towit she was made sick and sore; her mouth, jaw and face became infected and swollen and inflamed and she was caused to contract tetanus and to suffer great physical pain," etc.

The second count avers that defendant "undertook, for a reward, to treat or extract one of plaintiff's teeth; plaintiff avers that defendant so negligently conducted himself in the extraction of such tooth that as a proximate consequence of such negligence," etc., she suffered physical pain and was made sick and sore.

The third count avers that the defendant, for a consideration of $5, agreed and undertook to extract one of plaintiff's teeth; that defendant breached his agreement, in that "in extracting said tooth, he negligently used or employed instruments that were unclean."

It is well settled that the rules governing the duty and liability of physicians and surgeons in the performance of professional services are applicable to practitioners of dentistry. 21 R. C. L. 386, § 31; Simonds v. Henry, 39 Me. 155, 63 Am. Dec. 611; Friend v. Kramer, 236 Pa. 618, 85 A. 12, Ann. Cas. 1914A, 272, and note, pages 273, 274. That is, they are required in the practice of their profession to exercise reasonable and ordinary care, diligence, and skill in respect to the duty so assumed and undertaken, such skill and care as dentists in the same general neighborhood, pursuing the same general line of practice, ordinarily employ and exercise in like cases. Moore v. Smith, 215 Ala. 593, 111 So. 918.

■■ Unless they so expressly agree and undertake, they are not held to warrant a cure, or painless or even a successful operation, and are not liable for honest mistakes or error of judgment in making a diagnosis, or prescribing a mode of treatment, where the proper course is subject to reasonable doubt. Barfield v. South Highlands Infirmary et al., 191 Ala. 553, 68 So. 30, Ann. Cas. 1916C, 1097.

■ The burden was on the plaintiff to show negligence or the want of proper knowledge and skill on the part of the defendant.

The evidence here is without dispute that, when the plaintiff went to the defendant for treatment, she was suffering from an infected tooth, which defendant after preparing himself and sterilizing his instruments, located and extracted. The evidence further shows, after the tooth was extracted, the lacerations to the alveolus were disinfected and treated, and the plaintiff was instructed to return to defendant's office for further treatment.

The plaintiff's evidence goes to show that immediately before the tooth was extracted the defendant injected some medicine into her gums, presumably to lessen the pain, and that she became sick; that soon after the operation her face began to swell, and the muscles and glands in her face and mouth became so taut that she could not open her mouth.

To state what occurred in the language of the plaintiff, on her second visit to defendant's office: "When I went back the third day after he had pulled my tooth, I got in the chair, and he asked me to open my mouth, and I couldn't open it, and he said he would show me how he could open it, and he took my mouth and jerked it and tried to open it, and my jaws were locked and the glands and all. I couldn't open my mouth at all and he tried to open it with a sudden jerk, and when he did, it popped my jawbone, I guess. Then I had a nervous chill, and I wasn't easy. Nothing would ease me for two weeks."

Plaintiff's sister, Mrs. Clayton, testified that she was with plaintiff at defendant's office on the second visit she made; "at that time he did not give her any treatment, but put some iodine or something on a little stick, but he didn't put it in her mouth because she couldn't get it open. I asked him if there was anything he could do, and he said he couldn't do anything without he could get her mouth open, and he jerked it and she told him he like to have broken her jawbone."

Defendant's version of the second visit was: "I saw her next in about a week. I don't remember the exact day, but about a week when she came back her jaws were practically closed; could open them just a little bit. I did not jerk it aloose or injure the muscles in any way. I massaged the jaw and used everything known to the dental profession; sterilized the cavity and massaged the jaw, and she got to where she could open her mouth and I could treat it very nicely. I did not see her any more until two or three months, when she came there with a proposition for me to give her $288.00 and call the deal off."

The plaintiff was examined by two or more medical doctors and treated by them and by Dr. Townsend; another dentist, all testifying as witnesses, and their testimony was to the effect that they discovered no injury to the jawbone or to the muscles. They all agreed that plaintiff's trouble was from an abcess in the alveolus from which the tooth was extracted, and Dr. Townsend's testimony goes to show that the tooth next to the one extracted by the defendant was "a dead tooth," and that there was an abscess at the root of it.

Dr. H. N. McTyeire, a brother of the defendant and a dentist of long experience, was present when the tooth was extracted, and assisted in the operation, and his testimony shows that the method used in the operation and treatment of the plaintiff's ills was the method usually employed by dentists generally in that community. This evidence was in no way disputed.

[6] It is well settled that the doctrine res ipsa loquitur does not apply in cases such as this and the burden of proof is not shifted by showing painful or unfortunate consequences attending and following the treatment or operation by a physician or surgeon. Moore v. Smith, 215 Ala. 592, 111 So. 918; McKinnon v. Polk, 219 Ala. 167, 121 So. 539; Torrance v. Wells, 219 Ala. 384, 122 So. 322.

■ The evidence is clear to the point that the infection in plaintiff's jaw was not the result of any negligence on the part of the defendant, and that the defendant was entitled to have the jury so instructed, on his special request embodied in the charge made the basis of assignment of error No. 2.

The only circumstance developed in the evidence justifying the refusal of the affirmative charge was what occurred on plaintiff's second visit to defendant's office, taking her evidence and that of her witness as true.

After allowing every reasonable presumption in favor of the correctness of the verdict, we are clear to the conclusion that the preponderance of the evidence against the verdict is so decided that it should not be allowed to stand, and that the trial court erred in overruling the motion for new trial. Carraway v. Graham, 218 Ala. 453, 118 So. 807; Friend v. Kramer, 236 Pa. 618, 85 A. 12, Ann. Cas. 1914A, 272; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

Reversed and remanded.

ANDERSON, C. J. and SAYRE and THOMAS, JJ., concur.