191 So. 894

### McDOWELL v. STATE.

6 Div. 395.

Supreme Court of Alabama.

May 18, 1939.

Rehearing Denied June 22, 1939.

Rehearing Granted Nov. 9, 1939.

St. John & St. John and Earney Bland, all of Cullman, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

FOSTER, Justice.

Appellant was convicted of murder in the second degree, and his punishment fixed at fifty-five years in the penitentiary. He shot deceased with a pistol in an altercation which occurred near the dwelling house of defendant.

Counsel for appellant in brief have referred to only two questions which they consider good grounds for a reversal. One is the refusal to give written charges in substance that defendant was under no duty to retreat. This is upon the theory that he was within the curtilage of his dwelling. The other question goes to an objection to a certain feature of the argument of the solicitor for the State. We

will later refer in detail to this contention. We have also examined the record for other questions and find none which need consideration.

With reference to the duty to retreat, we do not understand from the evidence that this killing occurred on the premises of defendant. As we interpret the evidence it occurred in the public road at the entrance to the driveway into the premises of defendant. The witnesses in the main refer to it as on the edge of the road in front of the driveway, or even with it. There was a photograph in evidence showing the location, and some of the evidence related to objects shown on it. It is not before us. In this state of the record we cannot say that it was the duty of the court to charge, certainly without hypothesis, that there was no duty to retreat; or that within the curtilage of the dwelling there is no duty to retreat. We do not know what aid the photograph would be on that subject.

There is nothing apparent in the trial, including the charge of the court, that there was any contention that this occurred on the premises of defendant where he resided so as to relieve him of the duty to retreat. So that we do not think there was error in refusing the two charges in question, which we will number one and fourteen.

The second contention made on behalf of appellant is the objection to an argument by the solicitor for the State as follows: "Don't you know if Earney Bland and Colonel St. John could have gotten witnesses to have proved the defendant's good character, they would have put them on the stand". The bill of exceptions also states that this remark was made in answer to argument of Mr. Bland, attorney for defendant. The defendant had testified as a witness in the case, and thereafter the State had proven by several witnesses that defendant's general character was bad. Defendant did not offer proof that his character was good.

The State's evidence of bad character was only impeaching in its effect and no objection was made to it. Forman v. State, 190 Ala. 22, 67 So. 583.

Reliance is had on that line of cases holding that no unfavorable argument of counsel can be made because of the absence of witnesses equally accessible to both parties. 6 Ala.Dig. 583, Criminal Law, ☞ 721½. But that principle does not serve to prohibit counsel from commenting on the failure of his adversary to produce evidence of the good character of his witness (especially when he is the witness), when impeaching evidence has been introduced, or when the comment is pertinent to answer an argument made by opposing counsel. Bardin v. State, 143 Ala. 74, 38 So. 833; Nicholson v. State, 149 Ala. 61, 42 So. 1015; Martin v. State, 18 Ala.App. 434, 92 So. 913; Earle v. State, 1 Ala.App. 183, 56 So. 32.

The remarks of the solicitor here in question are within that principle.

There is no error in the record which serves to reverse the judgment.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, Justice.

We did not treat the ruling on motion for a new trial in our former opinion, for though counsel made reference to it in their brief it was not one of the two theories on which they declared in brief that they sought to effect a reversal. But we did then consider the motion, and on application for rehearing have given further consideration to it.

Defendant and his wife were the only eye witnesses, and their testimony relates an occurrence so unusual that the jury was probably authorized to discredit it, considering they both had a direct and material interest in the result, and the testimony impeaching defendant's character.

It is probably a fair inference that they had a sudden encounter without previous disagreement. But the nature of it and its details are known only to defendant and his wife. Defendant killed deceased with a deadly weapon, and intentionally, as we think the jury could infer. That raises a presumption of malice and unlawfulness, unless the circumstances and evidence rebut that presumption. 11 Ala.Dig., Homicide, p. 343, § 146, p. 345, § 151.

So that without credible evidence of the true facts and details that presumption would persist. If the jury had accepted in full the evidence of defendant and his wife, they would probably have acquitted him on the doctrine of self-defense. They might accept some of their evidence, but not all, or have been impressed they did not tell it all.

There was much evidence of the bad character of defendant, not contradicted.

The degree of unlawful homicide could not be reduced to manslaughter on account of the use of offensive words not accompanied with an assault or a threatened assault. 11 Ala.Dig., Homicide, p. 290, § 45.

This might be sufficient to reduce the offense to murder in the second degree, but not below that.

We do not sit here as jurors. The jury acted on the evidence, and the trial court refused to set the verdict aside. They might very well have concluded that no assault was made on defendant, but that they had a sudden quarrel, and on account of opprobrious words used by deceased, defendant shot him.

We cannot say that such a finding would not be supported in view of the legal presumptions. And it is not our province to pass on the extent of the punishment fixed by the jury, unless it, together with other circumstances, show that the jury acted on the case under the influence of some improper sentiment sufficient to show that defendant did not have a fair trial, for which the verdict should be set aside and a new trial granted.

Application for rehearing will therefore be overruled.

ANDERSON, C. J., and BOULDIN and KNIGHT, JJ., concur.

GARDNER, THOMAS, and BROWN, JJ., dissent.

GARDNER, Justice (dissenting).

The conviction of this defendant of murder in the second degree, with imprisonment for a term of fifty-five years, to all practical purposes constitutes a life sentence.

Unless the testimony of defendant and his wife are given some degree of credibility, the circumstances of the killing are wholly speculative. Defendant and deceased had been friends for many years. No differences had ever arisen between them so far as this record discloses. Defendant could have had no motive in maliciously killing the deceased. The difficulty must have grown out of the kindly act of defendant in going, in the night, to the aid of deceased as he called at defendant's home for assistance as to his car. Unquestionably deceased did go to defend-

ant's house and ask for aid. His car was "dead," and in a muddy road. Clearly too, defendant obligingly complied, and went on this fatal night to assist defendant in pushing his car. Deceased, their efforts failing, was upset and out of humor, and finally asked defendant to get his own car out and use it for the purpose. Defendant, insisting he could not handle his car well at night and that both cars would get in the mud, declined to do so, and his wife joined in this refusal. Defendant's version is that at this deceased became angry, used abusive language to him, with a slurring remark to his wife, struck and kicked him, and finally, when the single shot was fired that proved fatal, deceased was about to attack him with a car instrument of some character. Defendant and his wife are the only eye witnesses, and there is no evidence to the contrary. Defendant also gives explanation of the reason he had his pistol. But details need not be here given.

True the jury had the right to disbelieve the evidence of both of them. But the State offers nothing that would reflect upon the fact that the origin, at least of all of this trouble, was as stated by defendant. And the witnesses who testify to defendant's bad character (or most of them), admit defendant was honest and would tell the truth. Upon what theory his character was bad, they leave to speculation, and, indeed, the State's entire case for a conviction of murder is rested upon speculation.

The testimony of defendant and his wife, to my mind, has a ring of probability and reasonableness, and viewing the case from all angles, I am persuaded that in no event should a conviction be allowed to stand for the degree of homicide of which this defendant was convicted.

I recognize the caution that should be observed in disturbing the ruling on a motion for a new trial. But we have a duty to perform, and in the performance of that duty, in Roan v. State, 225 Ala. 428, 143 So. 454, 460, this Court made use of the following expression that is here directly applicable: "We may conclude by saying that after allowing the reasonable presumptions in favor of the correctness of the verdict rendered—guilty of murder in the first degree—we are clear to the conclusion that on the evidence before us the preponderance thereof is against the verdict rendered; and it is so decided that the

verdict should not be allowed to stand for that degree of homicide. McTyeire v. McGaughy, 222 Ala. 100, 130 So. 784."

I am constrained to believe, therefore, that the ends of justice require a retrial of this cause, and that the motion to that end should have been sustained. I therefore respectfully dissent.

THOMAS and BROWN, JJ., concur in the foregoing views.

On Second Application for Rehearing.

BROWN, Justice.

The only evidence going to sustain the verdict of the jury is the fact of the killing of the deceased by the defendant by shooting him with a pistol, facts admitted by the defendant, and in nowise inconsistent with self-defense.

■■■■ It is familiar law that: "Malice may arise on the instant; and from the use of a deadly weapon, whereby one intentionally takes the life of another, the law raises a prima facie presumption that the killing was done maliciously, *unless the circumstances of the killing disprove malice*." Dixon v. State, 128 Ala. 54, 57, 29 So. 623, 624. (Italics supplied.)

■■■■ It is also well settled that: "Whenever there are any facts testified to on a trial for murder, and which are necessary and are relied upon to sustain the charge of murder, and a jury could legally infer from the facts proving the offense that the defendant acted in self-defense, or the homicide was the result of sudden passion, engendered by sufficient provocation, and without malice, it is error to charge the jury as to the presumptions arising from the use of a deadly weapon, without accompanying such charge with the further statement, 'unless the evidence which proves the killing rebuts the presumption.'" Hornsby v. State, 94 Ala. 55, 66, 10 So. 522, 526.

The majority opinion promulgated on the first application for rehearing concedes: "If the jury had accepted in full the evidence of defendant and his wife [the only eye witness to the tragedy], they would probably have acquitted him on the doctrine of self-defense."

The necessary inquiry therefore is: What reasonable basis can be found in the evidence for not accepting the evidence of the defendant and his wife, aided by the presumption of innocence, as it was?

The answer of the majority is: (1) The presumption of malice arising from the use of a deadly weapon; (2) the evidence offered by the state going to show defendant's bad character; and (3) the interest of the defendant and his wife in the result.

We will now examine these bases of non-acceptance in the order stated. The circumstances attending the killing, as disclosed by the undisputed evidence, both of the state and the defendant, affords no basis for the presumption of malice from the use of the pistol by the defendant on the occasion. The evidence shows that the deceased had been working on and worrying with his old Ford automobile all day, trying, with the aid of a mechanic, to get it to run, and about night got it started, and on his way home the automobile stalled in a mud hole at the top of the hill above defendant's home. That the starter stuck and would not start the motor; that deceased trudged down the road bare-footed and called his neighbor and friend, who had just returned from his barn where he had been to look after the comfort of his faithful animal—a mare that was expected to give birth to a colt—and was preparing to retire, but had not undressed. The defendant's evidence and that of his wife shows that when defendant was preparing to go to his barn in the dark, he picked up a thirty-two caliber Smith and Wesson hammerless pistol and put it in his overall pocket; that he was not a habitual pistol carrier, but that this pistol was kept in the house, because of a threatening anonymous letter defendant had received some three or four years previous.

Defendant, after pulling on his shoes, went with deceased and made every effort to aid him to get the car started, without success, when deceased abused defendant and his wife because they refused to use their automobile on the muddy road to push deceased's car, for reasons stated that were reasonable. The defendant's evidence, and that of his wife, goes to show that deceased assaulted the defendant, kicked him down against a stump, and continued the assault by striking defendant with a piece of old buggy spring that was used as a tire iron, and had been used by the parties in trying to unlock the jammed starter on deceased's car. That just before the killing the deceased had knocked defendant to his knees, and was threatening to continue the assault, and while in this position the defendant shot the de-

ceased once with said pistol and killed him.

The defendant's testimony is corroborated by the physical facts given in evidence by the state's witnesses showing that the piece of buggy spring was on the ground where deceased fell almost within grasp of his right hand.

And by the testimony of the state's witnesses, Dr. McAdory and Coroner Moss showing that the bullet entered deceased's body about four inches below the left armpit, "in the axillary line, just behind the axillary line, that is the line that runs from the armpit down the center of the body * * * between the sixth and seventh rib," ranged upward about thirty degrees, passed through the left lung behind the heart and through the large aorta and on through the right lung and lodged in the right shoulder.

This testimony clearly corroborated the defendant's testimony and that of his wife that defendant was down when he shot deceased, and that deceased was standing over him, in the act of continuing the assault.

Mrs. McDowell testified: "I saw my husband right after the difficulty. I saw one skinned place up here, one here and two places on the side of his nose, and the blood was dripping on the side of his face. There was an injury on his arm, a big place just below his elbow."

The defendant testified: "He hit me two licks up here on the head, and hit me one back across this way, knocking a plug out of my teeth, knocked one of my teeth out. I throwed up my left hand but he hit me two licks there, and two knots on my elbow bigger than my thumb. My face was bleeding. It was a week or better before I could shave."

The testimony of the sheriff is to the effect that he did not examine the defendant's head; that there were bloody places on the defendant's face, and abrasions on the defendant's nose, and "bruises" on his arm.

As before stated the circumstances of the killing as disclosed by this evidence "disprove malice."

The state's testimony, offered to show defendant's bad character, is without probative force in so far as truth and veracity is concerned. All the witnesses agree that defendant had the reputation of a truthful man, and as a man that paid his debts. Moreover, the defendant's testimony is corroborated by that of his wife, who is in no way impeached, and by the physical facts disclosed by the testimony of the state.

The law which permits the defendant to testify and permits a defendant's wife to testify in his behalf is a recognition of the fact that their testimony can not be capriciously disregarded because of interest in the result. It must manifest other infirmities, which, when considered with such interest, renders it unworthy of belief.

The solicitor, on the cross-examination of the defendant, brought into the case the source of the anonymous letter, a fact wholly immaterial, calculated to create a highly prejudicial atmosphere unfavorable to the defendant, and which probably influenced the result.

I am fully persuaded that the verdict of the jury is contrary to the great weight of the evidence and that the court erred in refusing the defendant a new trial. Roan v. State, 225 Ala. 428, 143 So. 454.

Judgment of affirmance set aside and reversed and remanded.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur in the foregoing opinion.

The other Justices adhere to their concurrence in the opinions promulgated by FOSTER, J.