11 So.2d 466

### SMITH v. STATE.

6 Div. 843.

Court of Appeals of Alabama.

March 3, 1942.

Rehearing Denied April 7, 1942.

Reversed after Remandment Nov. 17, 1942.

Rehearing Denied Dec. 15, 1942.

Pennington & Tweedy, of Jasper, for appellant.

Wm. N. McQueen, Atty. Gen., and Jas. F. Matthews, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The opinion heretofore rendered in this case by this court is hereby withdrawn, and held for naught. Said opinion dealt only with one of the several points of decision presented by the record and insistences on this appeal. Our conclusion as to said point of decision was not accorded to by the Supreme Court, on certiorari, and the writ prayed for was granted 11 So.2d 471;[1] the Supreme Court rendered an opinion to this effect and under the existing Statute, Code 1940, Title 13, Section 95, we are to be governed by said decision. The cause was remanded to this court for further proceedings.

Where the Supreme Court has granted a writ of certiorari and remanded the case to the Court of Appeals for fur-

ther proceedings, it becomes the duty of the Court of Appeals to examine the records and consider points of decision therein presented and not already decided by this court. Crisp v. State, 21 Ala.App. 449, 109 So. 282, 286.

We have carefully read and thoughtfully considered the entire evidence in this case, and are clear to the conclusion the appellant should have never been convicted for the offense of murder in the second degree, for the preponderance of the evidence does not sustain such a conviction, and the verdict of the jury to this effect was not responsive to any of the evidence adduced upon the trial.

Where the preponderance of evidence, as here, does not sustain a conviction for murder in the second degree, it is the duty of the Appellate Court to grant the defendant's motion for new trial, and set aside the verdict. This was done in each of the following cases: McDowell v. State, 238 Ala. 482, 191 So. 894, 897, 898; Roan v. State, 225 Ala. 428, 143 So. 454, 460; Bufford v. State, 25 Ala.App. 99, 141 So. 359, 360; Robinson v. State, 29 Ala. App. 47, 191 So. 649, 651, 652; Roy v. State, 25 Ala.App. 510, 149 So. 713, 714.

A killing and sudden passion, excited by such provocation, without malice, is manslaughter. Malice and heat of passion cannot exist. 13 Ruling Case Law 706.

In McDowell v. State, supra, the Supreme Court set aside a conviction of murder in the second degree because: "The verdict of the jury is contrary to the great weight of the evidence, and that the court erred in refusing the defendant a new trial." [238 Ala. 482, 191 So. 899.]

We recite a good portion of that opinion, and compare it with the facts in the Jim Smith case. Justice Gardner stated: "Defendant and deceased had been friends for many years."

The same is true of the deceased, Drake, and Jim Smith. They had been friends many years. Justice Gardner said: "No differences had ever arisen between them so far as this record discloses. Defendant could have had no motive in maliciously killing the deceased."

In the Jim Smith case the testimony is undisputed that no question had ever arisen as for the defendant having a motive for killing the deceased, Drake. The record does show that the deceased, Drake, had gotten mad at Jim Smith over a school teacher appointment, but that this fact was unknown to Jim Smith.

In the McDowell case the deceased went to the defendant's house and asked for his assistance. In the Jim Smith case, the evidence is undisputed that the defendant was walking along a sidewalk in Haleyville, and that the deceased, Drake, motioned or called Smith to come over to him, and Smith left the sidewalk and went over to where Drake was.

In the McDowell case, the deceased was the aggressor and struck the first lick. This evidence was established by only the defendant and his wife. In the Jim Smith case the undisputed evidence shows that after Drake called Jim Smith over to where Drake was, that Drake got mad at Smith, cursed him, struck the defendant, making a gash over his eye about one half inch or one inch long, knocked Smith backward, and stepped forward to hit Smith again, at which time the defendant, Smith, struck Drake one time with a knife, which hit Drake in the neck and from which Drake died.

This evidence was established by the defendant, and also by State witness Rufus Mann. All these facts are undisputed. In other words, the undisputed evidence shows Drake was the aggressor, brought on the difficulty, struck the first lick, and which was a dangerous lick around the defendant's eye, where, possibly, had the lick been lower he would have lost the sight of the eye; that Smith was in danger of receiving great bodily harm to himself at the time he struck Drake; that Drake knocked Smith backward, and was coming on him again when he struck him, and he could not retreat without possibly most serious danger to him.

In the McDowell case, although the evidence did bear out that the defendant was a truthful man, yet several witnesses testified that the defendant's character was bad. In the Jim Smith case the testimony is that Jim Smith's character was excellent. This was established by a large number of witnesses who had known the defendant for many years, and who had never heard anything against him. In the McDowell case Justice Gardner thought that the testimony of the defendant and his wife was reasonable, and he stated: "I am persuaded that in no event should a conviction be allowed to stand for the degree [second] of homicide of which this defendant was convicted."

In the Jim Smith case the testimony of the defendant was substantially the same as that of State witness Rufus Mann. The testimony of both sides in the Jim Smith case showed that the defendant should not have been convicted for murder in the second degree.

Justice Brown, who finally wrote the opinion reversing the McDowell case, stated that the circumstances attending the killing as disclosed by the undisputed evidence, both of the State and the defendant, afforded no basis for the presumption of malice by the use of a pistol by the defendant on the occasion. After quoting much of the testimony to show the deceased was the aggressor and that the sheriff saw bloody places on the defendant's face, he stated: "The circumstances of the killing as disclosed by this evidence, 'disproved malice.' "

In the Jim Smith case the deceased, Drake, called Smith over to him, and after some conversation, Drake cursed him, struck him, a hard lick over the eye with something which made a gash about one inch long, knocked Smith backward on the ground, and Drake raised his arm to hit him again when Smith struck at Drake with something to keep him off. The Deputy Sheriff who treated Smith's wound testified as to the character of the wound, and two of the witnesses testified that Smith's face was bloody. Smith immediately tried to stop the flow of blood by catching hold of Drake's neck and attempting to close the wound on Drake's neck. None of the witnesses for the State disputed any of these material facts, but as a matter of fact the eye witness for the State did bear out what Jim Smith had to say about the difficulty.

In the McDowell case, Justice Brown says the testimony of the defendant could not be disregarded because of the interest in the result. In the Jim Smith case, the testimony of the defendant is strengthened due to the fact the State's witness, Rufus Mann, gave the same evidence as to the difficulty. Justices Brown, Anderson, Gardner, and Thomas concluded in the opinions as follows: "I am fully persuaded that the verdict of the jury is contrary to the great weight of the evidence, and that the court erred in refusing the defendant a new trial."

In the McDowell case, Justice Gardner stated: "We have a duty to perform. * * * I am constrained to believe, therefore, that

the ends of justice require a retrial of this cause, and that the motion to that end should have been sustained."

In the Jim Smith case the facts for Jim Smith are much stronger and much more favorable to the defendant, Jim Smith, than they were to McDowell, and following the ruling in the McDowell case it seems that the ends of justice require that this court correct this wrong and injustice which was done the defendant, Jim Smith, and order that a new trial be granted Jim Smith.

The Supreme Court in Roan v. State, supra, set aside a verdict for murder in the first degree, stated: "We are clear to the conclusion that on the evidence before us the preponderance thereof is against the verdict rendered; and it is so decided that the verdict should not be allowed to stand for that degree of homicide." [225 Ala. 428, 143 So. 460.]

In the Roan case it seems that the defendant, Roan, did the cussing of the deceased, and that later the killing took place in a room where there were no eye witnesses. After considering the facts in the Roan case, the Supreme Court set aside that verdict. The Jim Smith case is much stronger, and there was an eye witness in the Jim Smith case, which eye witness was used by the State, and whose evidence showed that the defendant acted in self-defense when he struck the lick which resulted in the death of Drake.

The Court of Appeals in the case of Buford v. State, 25 Ala.App. 99, 141 So. 359, 360, set aside a verdict of manslaughter in the first degree, and stated:

"We have reached the conclusion that 'the preponderance of evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.'

"For the error, therefore, in overruling appellant's motion to set aside the verdict of the jury, etc., the judgment is reversed, and the cause remanded."

Again quoting from that decision, this court says: "The fact that there may have been some evidence in favor of the verdict, which had served to cause the giving of the general affirmative charge against its rendition, improper, * * * does not militate against the application by us of the rule * * * to grant him a new trial, on the ground that the verdict was against the great weight of the evidence."

Again in Robinson v. State, supra, this court rendered the following opinion:

16

"After a very careful consideration of all the evidence set out in this record, it is the opinion and judgment of this court that the defendant was free from fault in bringing on the difficulty in which the deceased lost his life, and that the defendant, in the light of the fury of the attack made upon him by the deceased and of the evident, imminent and impending danger to the life of the defendant, or of his suffering great bodily harm at the hands of his powerful and maddened assailant, who some of the evidence tends to show was a former prize fighter, was fully justified, under the rule of self defense, in shooting the deceased." [29 Ala.App. 47, 191 So. 651.]

That was a case of where the defendant was convicted of manslaughter in the first degree.

The verdict of murder in the second degree was not allowed to stand in the case of Roy v. State, supra. In that case the credibility of the prosecuting witness was involved, and the court stated: "The weight and credibility of witness Mrs. Wright's testimony remained a question for the jury. It was the duty of the court, however, on the motion for a new trial, to consider carefully the evidence of the two above-mentioned witnesses and to accord to appellant the benefit of any reasonable doubt arising from the consideration of all the evidence adduced. We think the court erred in overruling the motion for a new trial." [25 Ala.App. 510, 149 So. 714.]

In the Robinson case the defendant shot the deceased in the defendant's house, but only after the deceased had been the aggressor and had chased him all over the house, and also threatened to do great bodily harm to the defendant. In the Jim Smith case it affirmatively appears that the deceased, Drake, was the aggressor, he struck the first lick, and, as the undisputed testimony shows, was in the act of striking the second lick when the defendant, Jim Smith, threw up his arm and cut Drake on his neck. The first lick which Drake landed was unquestionably a dangerous lick, just missing his eye about a half inch, and, as stated, which lick if it had landed in his eye would in all probability have caused Jim Smith to lose the sight of said eye. This necessarily put Jim Smith in the position of receiving serious injury at the hands of the deceased, Drake, and while Drake staggered him with the first lick, he, Drake, took two or three steps forward to hit him again. Thus it appears that if this testimony was true, and it was without dispute, Jim Smith was justified in taking the action which he took under the circumstances.

 The following rule is well settled in this State which is found in 13 Ruling Case Law 786: "The distinction between murder and voluntary manslaughter is found in the dividing line between malicious action on the one hand and action in the heat of passion on the other. Malice and heat of passion cannot coexist. Again, voluntary manslaughter differs from homicide which the law deems excusable because committed in self defense in that in the one case there is apparently necessity for self preservation to kill the aggressor, and in the other there is no necessity at all."

 It is well settled that a killing in sudden heat of passion, excited by provocation, is not murder. In McDowell v. State, supra, the prima facie presumption of malice arising from the use of a deadly weapon may be rebutted, and the circumstances of the killing may disprove malice.

 As stated, malice is an essential element of murder in the second degree. If there is no malice there cannot be a conviction for murder in the second degree. The circumstances in this case entirely disprove any malice on the part of defendant in striking deceased. To the contrary it is manifest that the act was either done in self defense, or was a result of passion suddenly aroused by the blow which the deceased struck defendant. In either one of these events a conviction for murder cannot be allowed to stand. It was not involved in the case. There was no malice. Appellant proved an excellent character; there is no evidence tending to show he had any motive for killing the deceased. They had been good friends, and had lived together in the same neighborhood practically all their lives. The State's witness, Rufus Mann, who was the only eye witness outside the defendant, testified that the deceased, Drake, was the aggressor, struck the first lick, and was striking the second lick when Smith struck. Under this undisputed testimony, we are of the opinion it would be wrong and unjust to make a man serve time in a penitentiary on the conviction of murder. Under the testimony of the State's only eye witness manifestly the act of Jim Smith was either in self defense, or it was the result of sudden passion. All of the facts and circumstances disprove

malice, and if there is no malice or if the great preponderance of evidence is against malice being in the case, then the defendant should not be convicted of a crime of murder, or at least a conviction for murder should be set aside.

From what has been said, it is the opinion and judgment of this court that error prevailed in the action of the court in overruling and denying defendant's motion for a new trial.

Reversed and remanded.