269 So.2d 141

Earl Edward GANDY

v.

STATE.

6 Div. 266.

Court of Criminal Appeals of Alabama.

Nov. 14, 1972.

B. F. Lovelace, Brewton, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Ralph E. Coleman, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted by a jury in the Circuit Court of Jefferson County, Alabama, of carnal knowledge of a girl over the age of twelve and under the age of sixteen years and his punishment fixed at ten years imprisonment in the penitentiary. The jury gave him the maximum sentence for this offense.

It will serve no useful purpose to memorialize the ugly and sordid details of the two-volume record in this case in the permanent archives of this court. Suffice it to say that the facts are offensive and revolting.

It would not be inaccurate to say that appellant was possessed of an insatiable sexual appetite. Females from age ten to age fifty were his targets; deflowerment, defilement, debasement, and debauchery were his goals and accomplishments (sic). At the time of his conviction in this case,

he had been married five times. The ages of his brides ranged from fifteen to twenty-eight. Appellant was thirty-eight years of age at the time of trial. The last marriage was to the half-sister of the victim. According to appellant, he married her on her promise to get the present charge dropped.

Appellant became acquainted with the victim's stepfather, Bill Powell, while both were serving time in Kilby prison. After their release from prison, appellant moved into the Powell home in Leeds, Alabama. Powell and appellant were engaged in the "roofing" business. This was a two-bedroom home. Powell and his wife occupied one bedroom, and, according to appellant, the victim, her sister and appellant occupied the other bedroom. The sleeping arrangements were in dispute. Mrs. Powell testified that appellant slept on a roll-away cot in the livingroom. It is not disputed that in 1965, when appellant moved into the Powell home, the victim was ten years of age and her sister was eleven years of age. He immediately began taking liberties with the ten year old girl, which was subsequently followed by sexual relations with her and this course of misconduct continued, off and on, until December 13, 1969.

Appellant denied that he ever had sexual intercourse with the victim, however, there were eye witnesses to these performances in the Powell home and in the back seat of his automobile and on at least one occasion to an unnatural act in the victim's home. While appellant denied any misconduct with the victim, he freely admitted that he had sexual relations with the victim's fifty year old mother during the year 1965. This was denied by Mrs. Powell.

Appellant testified that instead of mistreating the Powell girls, who were often without parental guidance, he assumed the roles of father-confessor, advisor, protector, and stood generally, as to them *in loco parentis*. As such, he advised them against the evils that could befall innocent and unsuspecting girls and taught them the finer things of life. As they grew and blossomed, he cautioned them against sex and advised them on any subject on which they sought information. Appellant's long prison record for robbery, burglary, grand larceny, buying, receiving and concealing stolen property, assault with intent to murder, and larceny from the person, hardly clothed him with the high moral standards befitting the roles he claimed to have assumed. The eye-witness accounts of his escapades over a period of years with the victim, beginning when she was ten years of age renders his moral values completely suspect.

According to the victim, the last time appellant had sexual intercourse with her was on Saturday, December 13, 1969. On this occasion, she accompanied appellant on an automobile trip from Leeds to the county jail to get her father released on bond because of a traffic violation for which he had failed to appear in court resulting in his arrest on the previous Friday night. She testified that appellant had sexual relations with her twice that day, (1) once in the car on a side road on the way to Birmingham, and (2) once at his brother's apartment somewhere in Birmingham.

It was on this date that the mother learned what had been going on between appellant and her daughter. The parents carried the victim to the sheriff's department that night and she was examined by a general practitioner who testified the girl, then fifteen, had a marital introitus. He made a vaginal smear, commonly known as a "pap smear". A microscopic examination failed to show male sperm. The doctor personally carried the smear slide to the office of a pathologist for further examination. The pathologist testified, saying, "I found spermatozoa to be present in this Papincalou (Pap Smear) preparation." The pathologist's report was made on December 16, 1969. A warrant was issued at the instance of Mrs. Powell and appellant was arrested. Appellant made bond and immediately married the victim's half-sister, Jonelle. He testified

that he had illegal sexual relations with Jonelle before he married her.

During cross-examination, appellant was asked:

"Q. Did you marry Jonelle to get the charges dropped?

"A. Yes, I did."

About two weeks before the instant trial, the victim was in an automobile in the parking lot at Leeds Hospital and appellant drove up and parked in a parking space next to her.

From the record:

"Q. What was the conversation you recall two weeks ago at the Leeds Hospital?

"A. Do you want me to tell you what was said?

"Q. What you remember was said, yes, ma'am.

"A. Well, he told me about this place —I mean this state where we could go and get married and that the reason he was living with Jonelle was to be next to me and he told me he loved me and told me how —well, what to say if they found out that I had relations with him —what to say.

"Q. What did he tell you to say?

"A. He told me to tell them it was somebody else, some other boy besides him."

■ Appellant urges a reversal of this case for the reason that the trial court denied his motion for a continuance. It is settled law that the question of granting or refusing a continuance rests largely within the sound discretion of the trial court and the exercise of such discretion is not reviewable on appeal except for gross abuse. Street v. State, 39 Ala.App. 190, 96 So.2d 680.

■ The indictment was returned by the grand jury on February 6, 1970. Copy of the indictment was served on the defendant on May 21, 1970. He was arraigned in the presence of his attorney on December 2, 1970, and entered a plea of not guilty. The case was set for trial on January 11, 1971, and passed until February 22, 1971. The case came on for trial on February 23, 1971. On that date, defendant's counsel made known to the court that on the following day he would be engaged in the trial of a civil action in the Circuit Court of Talladega County and a jury had already been struck for the civil case and out-of-town witnesses had been subpoenaed. He moved for a continuance which was refused and denied. Honorable Ralph E. Coleman was defendant's retained lawyer. When it became known that the trial had to proceed, one of Mr. Coleman's partners, Honorable J. Sherrill Hancock, was compelled to represent the defendant. Mr. Hancock stated for the record that he had not had any connection with the case prior to February 23, 1970. Mr. Hancock conducted a vigorous defense on behalf of the defendant. Even a cursory examination of the two-volume record in this case reveals that the defendant was represented by able, diligent and resourceful counsel. It is difficult to fathom how a better defense could have been presented had Mr. Hancock been connected with the case from the very beginning. We find no evidence of abuse of discretion in this case. Burleson v. State, 22 Ala.App. 526, 117 So. 500; Street v. State, supra; Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837.

■ Limit of voir dire examination of jurors is within the sound discretion of the trial judge. Johnson v. State, 43 Ala.App. 613, 197 So.2d 466.

■ Several questions propounded to the jury venire by appellant's counsel were sustained as to the form of the questions. The court made it plain that he was not restricting examination of the jury. Coun-

sel was allowed to ask the following question:

"I'll ask you if you serve on the jury, would you, regardless of the testimony in the case, bring back a verdict of guilty?"

This question was broad enough to encompass other questions to which objections were sustained wherein inquiry was made as to the feelings of the jury in sitting in judgment on a case wherein the defendant, who had served time in prison for other offenses, would testify in the present case. There was no abuse of discretion in limiting the voir dire examination of the jury. Muller v. State, 44 Ala.App. 637, 218 So.2d 698, cert. den. 283 Ala. 717, 218 So.2d 704.

■ Appellant complains of error in the action of the trial court in allowing Dr. Beaird, the pathologist, to testify as to the alleged vaginal smear of the victim since he did not take the smear, and no authentication that it was a true specimen, and no record as to how and when it was actually received.

The record shows that Dr. James P. Hodges, the jail physician, took the Pap Smear on the night of December 13, 1969. He personally delivered it to the Medical Laboratory Associates at the East End Memorial Hospital. That the glass slide was in a bottle with the patient's (victim's) name and the doctor's name and his request for "an examination for spermatozoa on behalf of the Sheriff's Department"; that the report of the pathologist was received a few days later and was kept as a part of the record in his office. The report was marked for identification as State's Exhibit 1.

Dr. Joseph B. Beaird, Jr., the pathologist, identified State's Exhibit 1, bearing his signature and the results of his examination, the name of the patient and that of the requesting doctor, Dr. Hodges.

From the record:

"Q. (By Mr. Fullan) Doctor, from the record which has been marked State's Exhibit No. 1, for the purpose of identification, you have previously stated that your findings were—

"A. That we identified spermatozoa in this preparation.

"Q. I want to hear the exact comment.

"A. Spermatozoa positively identified.

"Q. Doctor, does that mean you have found the male egg, you may say?

"A. The male regenerative cell, yes."

The evidence as to the custody and possession of the Pap Smear shows there is no missing link in the chain of identification. Identification and continuity of possession were sufficiently established, affording ample assurance of the authenticity of State's Exhibit 1 and the examination and report of the pathologist. Green v. State, 42 Ala.App. 439, 167 So.2d 694; Dennison v. State, 259 Ala. 424, 66 So.2d 552; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Jemison v. State, 40 Ala.App. 581, 120 So.2d 748; Aaron v. State, 271 Ala. 70, 122 So.2d 360; 22A C.J.S. Criminal Law § 709; 29 Am.Jur.2d, Section 774, page 844.

■ Section 443, Title 7, Code of Alabama 1940, guarantees the right of cross-examination, thorough and sifting, but this right is subject to reasonable control by the trial court.

In Bridges v. State, 284 Ala. 412, 225 So.2d 821, the Supreme Court said:

"It has been repeatedly held by this Court that the scope and extent of cross-examination is vested in the sound discretion of the trial court, and its rulings will not be disturbed in the absence of a clear showing that error intervened to the prejudice of the objecting party. Fuller v. State, 269 Ala. 312, 113 So.2d 153; State v. Hargrove, 282 Ala. 13, 208 So.2d 444. * * *"

■ Appellant's counsel's cross-examination of the sister of the victim covered twenty-eight pages of the transcript. She testified that appellant had sexual relations with her sister every time they went in the car together. The only reasonable deduction to put on this testimony was that these occurrences took place when they went in the car for a sufficient length of time and not when they went to the grocery store to get drinks and would not be gone longer than fifteen minutes.

From the record:

"Q. I understood you to say awhile ago every time you and Earl and Diana went out together, Earl and Diana had sex relations?

"A. They did, every time I was with them.

"Q. Tell us about the fifteen minute trip to the grocery store?

"A. Well, I would go in. I don't know what they did. I never stayed with them.

"Q. Did you see them have relations on the fifteen minute trips to the grocery store?

"A. Not while I was with them in the car.

"Q. I'm talking about when you were in the car?

"A. When I was in the car and gone a certain length of time, yes.

"Q. Let's go back to the time you were going to the grocery store on a fifteen minute road trip. Is it your statement he had relations before or after you went to the grocery store?

"A. I don't—when we were only gone fifteen minutes, we was back in fifteen minutes—

"Q. Did they have relations going to the grocery store?

"A. No.

"Q. Did they have relations going back from the grocery store?

"A. No.

"Q. Then you lied when you said every time you went out they had relations?

"MR. FULLAN: We object.

"THE COURT: Sustained.

"Q. Were you telling the truth awhile ago when you said every time you went out with Earl and your sister they had relations?

"MR. FULLAN: We object to that.

"THE COURT: Sustained."

No error was committed in sustaining the State's objections to the above questions. Houston v. State, 208 Ala. 660, 95 So. 145.

■ There was testimony touching the general bad reputation of the prosecutrix in the community in which she lived as well as her character for truth and veracity. This testimony was proper as it affected her credibility as a witness.

However, in a prosecution for having carnal knowledge of a girl over twelve and under sixteen years of age, no attack can be made on the girl's character as to chastity. The trial court properly sustained the State's objections to questions as to whether prosecutrix had indulged in sexual relations with different people. Harrison v. State, 28 Ala.App. 17, 178 So. 454; Marshall v. State, 22 Ala.App. 552, 117 So. 612.

■ It is settled law in this State that no unfavorable inference can be drawn, and no unfavorable argument to a jury made, by counsel against a party to a cause for failure to call a witness to testify, when that witness is accessible to both parties and can be introduced and examined by either party. Forman v. State, 190 Ala. 22, 67 So. 583; Jarrell v. State, 251 Ala. 50, 36 So.2d 336.

In his summation to the jury, appellant's counsel said:

"They didn't call the father—Why? I don't know why, but something is wrong when they didn't put the father of these girls on to testify."

The State objected and the court sustained the objection. There was no error in this ruling.

The mother, Mrs. Powell, was called by the defendant and testified at length. According to her testimony, she did not marry Mr. Powell until 1961. Mr. Powell was, therefore, the step-father of prosecutrix and was just as accessible to the defendant as a witness as was the mother.

The refused charges were covered in the court's oral instructions to the jury or were abstract and confusing.

There are no errors affecting the substantial rights of appellant and the case is due to be affirmed.

Affirmed.

All the judges concur except DeCARLO, J., who recuses himself.