BOOKOUT, Judge.
Second degree murder; sentence: fifteen years.
The appellant, the appellant’s brother, and the deceased, Oscar Bill Wright, were at the appellant’s home around noon on Saturday, July 19, 1975. They had been *1091 drinking since the previous evening as was their custom on weekends. The deceased died as a result of a shotgun blast. The appellant, after waiving the appropriate Miranda warning, gave and signed the following confession:
“. . . ‘We was shooting craps, so he picked up $10.00 of my money one time. The lady that I live with don’t allow any gambling there, so she went to town to buy some grocery (sic). So we started shooting craps. So when he picked up my $10.00 once I told him, “Bill, don’t do that anymore.” I told him, “Don’t pick up my money no damn more.” He said that as long as I put money down he was going to pick it up; and I said that “if you do, I’m going to kill you.” I went in my bedroom and I got my gun and loaded it. And as I started back out, my brother stopped me. So I put my gun back, and I shot some more dice; and he did the same thing all over again, by picking up my $10.00. He started out the side door, and I said, “Bill, I am going to kill you.” My brother jumped in front of me, and I said, “Move, Thomas,” and he fell back. Then Bill said, “He ain’t going to shoot me;” and as he started out the back door, I shot him. After I shot him, he came back in the house and sat down by the kitchen table and he said, “Jessie, I didn’t think that you would do this to me.” And I said, “Bill, I am sorry.” Then I called the police.’ ”
The appellant’s brother, Thomas James Sowells, testified that the deceased told him that the fatal shot was fired by the appellant. Fred Gamble, a neighbor, testified that he was at the appellant’s home at the time of the shooting. Gamble said that the appellant and the deceased were gambling and that the deceased appeared to be winning. Gamble also stated that the appellant alleged immediately prior to the shooting that the deceased had not given proper change for a ten dollar bill.
I
From a review of the record, we hold that the State made out a prima facie case for second degree murder. The appellant contends that the State failed to prove the essential elements of malice. This contention is without merit.
The intentional killing with a deadly weapon raises a presumption of malice unless the circumstances of the killing disprove malice. McDowell v. State, 238 Ala. 482, 191 So. 894 (1939). In the present case, the circumstances of the killing do not disprove malice. The jury could reasonably conclude from the appellant’s confession and from the testimony of Fred Gamble that the appellant maliciously shot the deceased as a result of an argument over the proceeds of a wager.
The appellant also appears to contend that he was too drunk to exhibit the element of malice. Ivory v. State, 237 Ala. 344, 186 So. 460 (1939). The problem of evaluation of alcoholic influence was discussed at length in Scott v. State, Ala. Cr.App., 333 So.2d 619 (1976). Whether the degree of intoxication is so excessive as to paralyze the mental faculties and render the appellant incapable of performing or entertaining the design to take life is a question for the jury. We hold that the jury finding regarding the element of malice was not against the weight of the evidence.
II
A motion to suppress the confession was filed before trial. The trial court waited until trial and then held a hearing on the motion out of the jury’s presence. The appellant contends that the denial of the motion was erroneous. The appellant’s primary argument is that he was too drunk to make a voluntary, knowing and rational confession of his own free will.
The interrogating officer testified that although the appellant appeared to have been drinking that he was not drunk. In addition, Fred Gamble testified that the appellant did not appear to be drunk on the day in question. We quote from Scott, supra:
*1092 “Intoxication which would affect the vol-untariness of a statement is primarily a question of fact which first addresses itself to the trial judge to determine admissibility and later to be submitted to the jury for whatever consideration it may deem appropriate. There was ample evidence, even though conflicting, from which the trial judge could conclude that the appellant was not intoxicated to the extent of mania. . . . ”
The trial court and the jury’s judgment were not against the weight of the evidence.
Ill
On December 15, 1975, the appellant moved for discovery and inspection and production of evidence. The motion was denied, and the trial began on December 15, 1975, at which time the appellant moved for a continuance which was also denied. The appellant contends that his right to confront witnesses under the Sixth Amendment and his right to due process under the Fourteenth Amendment were violated by the denial of the two motions. He cites Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) for the above proposition.
The appellant contends that he should have been allowed to inspect the murder weapon to see if it would fire; that he should have been told that the deceased’s father would be called as a witness to identify a photograph of the deceased;, that he should have been informed of the State Toxicologist’s likely testimony concerning the location and type of gunshot wound; and that he should have been given a statement made by his brother, Thomas Sowells.
At trial, the appellant testified, along with a police officer, that the shotgun would fire. In addition, the testimony of the deceased’s father, the testimony of the State Toxicologist, and the written statement of Thomas Sowells were not favorable to the appellant and did not tend in any way to exculpate the appellant. In Giles, supra, the prosecution suppressed evidence favorable to the defendants and used perjured testimony against the defendants. In Brady, supra, the prosecution suppressed extra-judicial statements made by the defendant’s confederate which were favorable to the defendant. Obviously Brady and Giles are inapplicable to the present case.
The granting of the appellant’s motion was within the sound discretion of the trial court. Daniels v. State, 49 Ala. App. 654, 275 So.2d 169 (1973). We find that the trial court did not abuse its discretion by denying the appellant’s motion for discovery. This is especially true in view of the fact that the appellant waited until the day of the trial to make the motion. All of the information sought by the appellant was made available at trial.
The denial or granting of a motion for a continuance rests in the sound discretion of the trial court, and the denial is usually not reviewable on appeal except for gross abuse. Gandy v. State, 49 Ala.App. 123, 269 So.2d 141 (1972). We find no gross abuse in this instance. We fail to see how the appellant was prejudiced by the denial of that motion.
AFFIRMED.
All the Judges concur.