Assault with intent to murder; sentence: twenty years' imprisonment.
Around 8:00 a.m. on December 15, 1977, appellant and three of his younger brothers, Eric, Cedric, and Melvin, arrived at Druid High School where his brothers attended school. The disputed testimony, taken in the light most favorable to the State, revealed that the four brothers went inside to lie in wait for Lee Angelos Williams, a student who had quarreled and fought with Eric the night before. While the victim *Page 593 
was climbing the stairs to his second floor homeroom class, Cedric stepped out and asked Williams why he had "jumped on his brother" and pushed him down the stairs to a platform between the two flights of steps. Cedric, joined by Eric, then began punching and kicking the victim into the corner of the platform. At some point the appellant jumped into the fracas and stabbed Williams while muttering, "I'm gonna kill you." Finally, Melvin ran up the stairs and struck Williams over the head with a weapon described as a "nunchkus" (two wooden sticks with metal tips connected by a metal chain).
Shortly after the ruckus began, the appellant said, "Let's go," and the four fled out of a nearby doorway to their car parked in the school parking lot. In the meantime, students witnessing the incident notified the school principal who met the bleeding victim as he was being carried down the hall to the nurse's station. Two motorcycle policemen and other investigators arrived at the scene as well as paramedics who transported Williams to a nearby hospital. The appellant and his brothers were apprehended within minutes after fleeing the scene.
 I
At trial appellant's counsel objected to the prosecutor's attempt to prove the character and reputation for truth and veracity of the appellant and other witnesses at school rather than in the community where they resided. Appellant contends that the trial court committed reversible error in overruling those objections.
The State, following the cross-examination of Williams wherein his testimony was impeached, attempted to rehabilitate his testimony by proving that he enjoyed a good reputation at school. After the prosecutor laid the proper predicate, the following occurred:
 "Q. Do you know Lee Williams' reputation in the community for truth and veracity?
"MR. CROWNOVER: We object Your Honor, please.
"MR. JAFFE: Your Honor, may I approach the bench?
"THE COURT: All right, approach the bench.
 "(At this time both the attorneys for the State and for the defendant had a conference at the bench outside the hearing of the jury wherein the following occurred).
"THE COURT: All right.
 "MR. JAFFE: Your Honor, we'd like to cite you the case of Daniels versus State and Dowell versus the State. We submit this goes to of [sic] a statement by a witness has been contradicted that this can be used in support of his testimony.
"THE COURT: I overrule the objection.
"MR. CROWNOVER: We except, Your Honor.
"THE COURT: All right.
 "(Back in open court wherein the following occurred in the presence of the defendant, his counsel, all officers as required by law and the jury.)
 "Q. Do you know Lee Angelo Williams, over the past two years are you familiar with his reputation in the community where he lives and in school where he attends for truth and veracity?
 "A. I cannot answer that question as far as the community is concerned, I do not have that knowledge, I can respond to the part of the question as to his reputation at school.
"Q. All right, sir. Please do.
"MR. CROWNOVER: Your Honor, we object.
 "MR. JAFFE: If Your Honor please, work or school is considered in the community if the witness is familiar with it.
"THE COURT: All right, I'll overrule.
"MR. JAFFE: All right, sir.
"MR. CROWNOVER: We except.
 "Q. You are familiar with it in the school, is that correct?
"A. That's correct.
"Q. And you've known him for two years in the school?
"A. That's correct.
 "Q. All right, sir. What is, in terms of whether it's good or bad, what is Lee *Page 594 
Angelo Williams, this student, his reputation as being a truthful person, is it good or bad?
"A. To my knowledge, it's very good."
(Emphasis added.)
After the appellant and his character witnesses took the stand, the State called Marion Bryant to rebut appellant's reputation for truth and veracity. Appellant's counsel specifically objected that the State had not laid a proper predicate. Ms. Bryant, who taught the appellant for nine months some three years prior to the incident, testified that he had a bad reputation for truth and veracity at school, but admitted she knew nothing about his reputation in the community where he lived. The State also attempted to prove the bad reputations of appellant's three brothers for truth and veracity. All three brothers had testified for the appellant. In rebuttal the State recalled Douglas Killough, their high school principal, who avowed that they all had bad reputations for truth and veracity. He stated that he only knew their reputations at school and admitted that he could not testify as to their general reputations for truth and veracity in the community where they lived.
It should first be noted that, with one exception, appellant's counsel assigned no grounds for his objections to the testimony in question. Our supreme court stated in Wallisv. Rhea Ross, 10 Ala. 451 (1846), and later quoted with approval in Brown v. State, 229 Ala. 58, 155 So. 358, 360
(1934):
 "Undefined objections should never be made to the admission of evidence; and it may be laid down generally, that if the party making them, will not particularize, the court is not bound to cast about for the grounds upon which, in the mind of counsel, they are rested, but may promptly disregard them. . . ."
Cited in Wilder v. State, 52 Ala. App. 157, 290 So.2d 225
(1974); Prince v. State, 50 Ala. App. 644, 282 So.2d 83 (1973). Therefore, the appellant, by his general objections, has presented nothing for this court to review.
The only specific objection raised by appellant's counsel was that the State had not laid a proper predicate for Ms. Bryant's testimony. We conclude that the trial court correctly overruled the appellant's objection as the State properly predicated Ms. Bryant's testimony by establishing that she had taught the appellant for nine months and had heard and observed others speak of the appellant. Although other grounds for objection may have been assigned, review on appeal is limited to the ground assigned. Prince v. State, supra.
Even had the appellant properly preserved the question for review, his contention would fail. As early as 1909, Alabama courts have recognized that:
 "The general rule is that, in order to impeach a witness by proof of bad character, the predicate is a knowledge of his character in the community or neighborhood in which he resides; but the term `community' or `neighborhood' is not susceptible of exact geographical definition, but means in a general way where the person is well known and has established a reputation. The inquiry is not necessarily confined to the domicile of the witness, but may extend to any community or society in which he has a well-known or established reputation. It is a matter of common knowledge that many men have their domicile at one point and business at another, spend much of their time at the latter, and in fact have a better established reputation there than at the place of their actual domicile. . . ."
Richard P. Baer Co. v. Mobile Cooperage Box Mfg. Co.,159 Ala. 491, 49 So. 92, 95 (1909). See also: Chavers v. State, Ala.Cr. App., 361 So.2d 1096, reversed on other grounds, Ala.,361 So.2d 1106 (1978); Craven v. State, 22 Ala. App. 39,111 So. 767 (1927); Marasso v. State, 18 Ala. App. 488, 93 So. 226
(1922).
This court quoted Professor Wigmore in Chavers v. State, supra, at 1103, explaining:
 "`But in the condition of life today, especially in large cities, a man may have one reputation in the suburb of his residence and another in the office or the factory at *Page 595 
his place of work. . . . There may be distinct circles of persons, each circle having no relation to the other, and yet each having a reputation based on constant and intimate personal observation of the man.'"
Wigmore on Evidence § 1616 (3rd ed. 1940).
See also: Gamble, McElroy's Alabama Evidence, § 26.02 (5) (3rd ed. 1977).
It appears that due to the increasing mobility of modern society a person may have separate and distinct reputations in his working community and his residential community. As most teenagers attend school rather than work and spend seven to eight hours each day, nine months per year, in school, it necessarily follows that they would become known and establish reputations among their classmates and teachers. The school, under those circumstances, becomes one of the "distinct circles" from which a person's reputation may be established. Therefore, the trial judge properly admitted the reputation testimony in question.
 II
Appellant argues that reversible error resulted from the refusal of the following requested charges:
"Defendant's Charge # 22
 "The Court charges the jury that to reduce an offense to an assault and battery, it is not necessary that the defendant, at the time he struck the blow, was unconscious of what he was doing, but, if there was a sufficient provocation to excite sudden passion, and the defendant acted under such passion, then the presumption is that the passion disturbed the sway or reason [sic], and made him regardless of his act, if you believe from the evidence, that the blow struck by Milton Steele resulted from heat of passion, engendered by an attack upon his younger brother and not from malice, then you cannot convict the defendant of assault with intent to murder."
"Defendant's Charge # 23
 "The Court charges the jury that if you believe from the evidence, that Milton Steele struck Lee Angelo Williams with a knife, without malice, but as the result of a heat of passion, engendered by Lee Angelo Williams having attacked his younger brother, then you cannot convict the defendant of assault with intent to murder."
"Defendant's Charge # 26
 "The Court charges the jury that if you believe from the evidence that the defendant, at the time he struck Lee Angelo Williams with a knife, did so as a result of a heat of passion, engendered by an attack upon his younger brother, then you cannot convict the defendant of assault with intent to murder, but assault with a weapon, or assault and battery at the most."
"Defendant's Charge # 27
 "The Court charges the jury that if you believe from the evidence, that Milton Steele struck Lee Angelo Williams with a knife, without malice, but as the result of a heat of passion, engendered by Lee Angelo Williams having attacked his younger brother, then you cannot convict the defendant of assault with intent to murder but of assault with a weapon or assault and battery at most."
Appellant submits that these jury instructions would have made it clear to the jury that the attacks on the appellant's brother were sufficient provocations to rebut the imputation of malice. We believe the trial judge correctly refused those charges.
It is generally recognized in Alabama that the State must prove intent and malice in order for a defendant to be guilty of assault with intent to murder. Crear v. State, Ala.Cr.App.,376 So.2d 778, cert. denied, Ala., 376 So.2d 788 (1979);Coleman v. State, Ala.Cr.App., 373 So.2d 1254 (1979); Lawhon v.State, 41 Ala. App. 577, 141 So.2d 205 (1962). Both malice and intent to murder may be inferred by the jury from the character of the assault, the use of a deadly weapon, and other attendant circumstances. Helton v. State, Ala.Cr.App., 372 So.2d 390
(1979); Snipes v. State, Ala.Cr.App., *Page 596 364 So.2d 424 (1978); Hall v. State, Ala.Cr.App., 348 So.2d 870, cert. denied, Ala., 348 So.2d 875 (1977). A knife has been classified as a "deadly weapon" under § 13-1-45, Code of Ala. 1975; Tolliver v. State, 50 Ala. App. 654, 282 So.2d 92 (1973);Roberts v. State, 49 Ala. App. 729, 275 So.2d 709 (1973). However, this court wrote in Hamm v. State, 56 Ala. App. 632,324 So.2d 345, 346 (1975):
 "A killing and sudden passion, excited by provocation, without malice, is `manslaughter,' since malice and heat of passion cannot co-exist, and is not murder. Smith v. State, 31 Ala. App. 12, 11 So.2d 466, cert. denied, 243 Ala. 627, 11 So.2d 473. To authorize a conviction for assault with intent to murder, evidence must show an assault with intent to take life, under circumstances which, if death had resulted, would have constituted murder. Thompson v. State, 37 Ala. App. 446, 70 So.2d 282."
Charge No. 22 omits the principle that the appellant's brother must be free from fault in bringing on the difficulty before the appellant can legally strike a blow in his defense. The appellant could not claim justification in defense of another where the person defended was not free from fault. That principle was aptly stated in Weaver v. State, 1 Ala. App. 48,59, 55 So. 956 (1911):
 "As a general proposition, the right of one to defend another is coextensive with the right of the other to defend himself, and the one who defends the other is upon no higher plane than the one defended; and, so, if the one defended is not free from fault in bringing on the difficulty, his defender cannot be, for when one intervenes to defend another, even though that one be in imminent danger to life or limb, he does so at his peril, if he strikes in defense of one not free from fault in bringing on the difficulty. . . ." (Citations omitted.)
Even if the appellant, as Charge No. 22 instructs, acted under sudden passion engendered by an attack on his brother, still his sudden passion is not legally recognized nor the provocation legally sufficient if the brother was not free from fault in bringing on the difficulty. Otherwise, defendants would be entitled to have similar charges given to the jury under ridiculous circumstances. For instance, suppose two brothers rob a bank and one is assaulted by a bank guard and the other stabs the guard to free his brother. No court would be justified in submitting to the jury the narrow principle of law that one acting on sudden provocation engendered by an attack on his brother may be acquitted of assault with intent to murder. Such a charge under the circumstances would not only be misleading, but would likewise be abstract under the particular facts of the case. Clark v. State, 54 Ala. App. 183,306 So.2d 51, cert. denied, 293 Ala. 749, 306 So.2d 54 (1974);Clark v. State, Ala.Cr.App., 333 So.2d 885, cert. denied, Ala.,333 So.2d 890 (1976); Slaughter v. State, 47 Ala. App. 634,259 So.2d 840, cert. denied, 288 Ala. 751, 259 So.2d 845 (1972).
Likewise, Charge No. 22 was properly refused in the instant case even though very similar verbiage was approved under certain factual circumstances set out in Smith v. State,86 Ala. 28, 5 So. 478 (1888). In that case the charge in question began "To reduce the offense to an assault and battery" and concluded with "if the jury believe this from the evidence, they may find him guilty of assault and battery merely."
In the instant case, Charge No. 22 purports to instruct the jury at the beginning on the standard for reducing the offense to assault and battery, but after setting out the proposition of law stated in Smith ends with a charge that the jury "cannot convict the defendant of assault with intent to murder." The charge in Smith, supra, began as an instruction as to what circumstances may reduce the offense to a lesser offense, and it concluded by giving the jury the option of returning a verdict as to that lesser offense. However, the instant charge begins to instruct concerning a lesser offense, but concludes in language which appears to direct a complete *Page 597 
acquittal under the hypothesis used. The charge is, therefore, confusing and misleading in concluding with a different instruction than that with which it began.
Charge Nos. 23, 26 and 27 each omit the necessity of the brother being free from fault as set out concerning Charge No. 22, supra. Additionally, the trial court gave an extensive and comprehensive oral charge to the jury, among other things, defining the crime charged; explaining malice and intent; explaining and defining adequate provocation and passion; and instructing on the principles of law concerning defense of another and self-defense. Those principles of law which appellant attempted to set out in the refused charges referred to above were properly explained in the court's oral charge. Section 12-16-13, Code of Ala. 1975.
At the end of the trial court's oral charge, both the appellant and the State announced "No objections." The appellant's contention for the first time on appeal that a portion of the oral charge was incorrect is not subject to review. Cox v. State, 280 Ala. 318, 193 So.2d 759 (1967); Tuckv. State, Ala.Cr.App., 384 So.2d 1240 (1980).
AFFIRMED.
All the Judges concur.